AUGUST PRANGE and BANKERS TRUST COMPANY OF LITTLE ROCK, ARKANSAS, Executors of Estate of GEORGE HENRY PRANGE, Appellants, v. INTERNATIONAL LIFE INSURANCE COMPANY OF ST. LOUIS, MISSOURI.—46 S. W. (2d) 523.

Division One, February 11, 1932.

652

*Frauenthal & Johnson, Meehan & Moncrief* and *James J. O'Donohoe* for appellants.

*Jourdan & English* for respondent.

RAGLAND, J.—This case comes to the writer on reassignment. It is a suit on five policies of insurance, for the aggregate sum of $112,500 with interest, issued by defendant on the life of George Henry Prange. All of them are of the class known as non-participating life policies; the first provides for additional accidental death benefit and total disability benefit, otherwise their provisions are precisely the same. The first four are for $25,000 each and the last for $12,500. The defendant is incorporated under the laws of this State as an old-line insurance company, with its home office at the city of St. Louis; the insured was a resident of the State of Arkansas; the policies in suit were applied for and delivered at Little Rock; both parties to this proceeding treat them as Arkansas contracts.

On April 28, 1922, the insured applied to defendant for $100,000 life insurance, to be written in four policies of $25,000 each. The

application was in writing and was taken by one Remmel, defendant's agent at Little Rock. In the application the insured stated: "I was born on the 5th day of October, 1883, making my age, nearest birthday, 38 years." At the time of taking the application Remmel pointed out to the insured that his then nearest birthday was October 5, 1922, at which time he would be thirty-nine years of age; but that by predating the policies, or having them take effect prior to April 5, 1922, he could have the benefit of the rate applicable to age thirty-eight, and thereby save on premium payments $21 per year on each policy. On May 18, 1922, Remmel received at Little Rock four policies issued by defendant on the application just referred to, numbered 113718-19-20-21, being policies now in suit. They were dated May 16, 1922. Accompanying them there was a supplemental application to be executed by the insured before the delivery of the policies to him. This application was dated May 18, 1922; it was executed by the insured on that date, and thereafter, and on the same date, the four policies were delivered to him. In the supplemental application the insured stated: "I desire my policies to be dated April 4, 1922."

At the time of the delivery of the four policies just mentioned, Remmel wired defendant at the insured's request for a policy of $12,500 additional insurance. The policy, numbered 113843, being the fifth here in controversy, was issued and mailed to Remmel. It was dated May 19, 1922; there accompanied it a formal application to be executed by the insured before the delivery of the policy. It was executed on May 24, 1922. Thereafter, and on the same day, Remmel delivered the $12,500 policy. In this latter application the insured incorporated by reference "all statements made in such application [for policies numbers 113718-19-20-21] and continuations or amendments thereto" and then expressly agreed "that the additional insurance applied for shall take effect as of the 4th day of April, 1922."

The insurance practice of reckoning age from the nearest birthday, given recognition by statute in this State (Sec. 5751, R. S. 1929), is one of which we take judicial notice. With respect to it and that of predating policies, one of defendant's officers testified:

"It was the uniform practice of the company to date back policies if it was so requested by the applicant, or if it was apparent from the date of birth, and the age nearest birthday given in the application, that the man wanted the benefit of the lower age. That has always been the uniform practice of the company and available alike to everybody. It was the custom of the company to antedate a policy without his request in the application, where the age nearest birthday was given as an age that was less than the age the man would have been at the date of application. In such case it was the practice of the company to give the man the benefit of the lower

age and date the policy the last day that he had the lower insurance age. In that case his request would be apparent from the age nearest birthday in the application.''

With reference to the same matter, the State Insurance Commissioner of Arkansas testified:

''There is no rule of my department prohibiting what is known as predating policies. If a man was 38 years of age on October 5, 1921, he would be charged a premium rate as of age 38 for six months following his birthday. That is what I understand is meant when a man is said to have two birthdays in a year, first his natural birthday and then his 'change of year birthday' for insurance. I know of no law prohibiting the predating of policies. It frequently happens that a policy may be dated back as much as thirty days after the six months' period. In computing the reserve on the policy we would look only to the age as set out in that policy, regardless of the date of the policy. It is the universal custom, as recognized by my department, to change the year on the six months' period. So far as setting up the reserve is concerned, the premiums are governed by the previous birthday to the six months' period, and after the six months' period they are governed by the next following birthday.''

In each of its said policies the defendant promised to pay to the executors of the insured the amount therein named, ''upon receipt of due proof of the death of the insured . . . during the continuance of this policy.'' Except the accidental death and total disability benefits provided for in Policy No. 113718, and the amounts of premium payments required, the policies were all identical in their provisions. As bearing on the questions involved on this appeal, we quote the following from Policy No. 113718:

''If any premium is not paid on or before the day it falls due, the policyholder is in default; but a grace of one month (not less than thirty days) will be allowed for the payment of any premium after the first, during which time the insurance continues in force. If death occurs within the period of grace the unpaid premium for the then current insurance year will be deducted from the proceeds hereof. . . .

''This policy and application herefor constitute the entire contract between the parties hereto. . . .

''The payment of any premium shall not maintain this policy in force beyond the date when the next payment becomes due, except as to the benefits provided for herein after default in payment of premium. . . .

''This contract is made in consideration of the application herefor, which application is made a part hereof, and the payment of Seven Hundred and 75/100 Dollars, constituting payment of premium for term insurance ceasing at noon on the fourth day of April, 1923,

from which date it may be renewed as an Ordinary Life policy by the payment of like sum on said date and on each succeeding anniversary date of the policy during the lifetime of the Insured. . . .

"After delivery of this policy to the Insured it takes effect as of the fourth day of April, 1922.

"The contract of insurance shall not be deemed to have been made until the first premium is paid and the policy delivered during the lifetime and good health of the Insured."

The aggregate amount paid by insured upon the delivery of the policies was $2,083. A like sum, according to the provisions of the policies, was due April 4, 1923, and on each succeeding anniversary date of the policies during the lifetime of the insured.

In the latter part of March, 1923, the insured stated to Remmel that he would not have sufficient cash to pay the whole of the premiums coming due on April 4, 1923, and requested him to write the defendant to ascertain whether it would accept his notes for a part of the amount. In response defendant offered to accept $452.50 in cash, with the insured's notes maturing July 4, 1923, for the balance. This offer Remmel communicated by letter to the insured on April 3, 1923. To this letter insured made no reply, but in a number of conversations shortly following he told Remmel that he would take care of the matter before May 4, the end of the period of grace. This he failed to do. On May 16, 1923, defendant gave him notice by letter that his failure to make the payments prior to May 4 had caused his policies to lapse, and advised him to consult Remmel as to the requirements for reinstatement. At about the same time the insured told Remmel that he was unable to carry so much insurance, and that he would endeavor to have a part of it reinstated later on. He died September 26, 1923, without having made any payments on the policies other than the ones made at the time of their delivery.

It was plaintiffs' theory below, as it is here, that, as each of the policies provided that the contract of insurance should not be deemed to have been made until the first premium was paid and the policy delivered, and as four of the policies were delivered on May 18th and one on May 24th, 1923, the first payments insured Prange under them until May 18th and May 24th, 1923, respectively; that Prange had thirty days (of grace) after said dates respectively to make the next premium payments; and that defendant having prior to the elapse of such periods wrongfully declared that a forfeiture had occurred as to each of the policies, the insured was not bound to make, or tender, any further payments thereafter. The only question submitted to the jury by the trial court was whether the insured acquiesced in the forfeitures declared by defendant, and thereafter abandoned his contracts of insurance. The jury found the issues

generally for the defendant and judgment went accordingly. The cause is here on plaintiffs' appeal.

The rulings of the trial court assigned as error by appellants. relate to the giving, refusing and modifying of instructions asked and the admission and exclusion of evidence. The respondent contends that, regardless of the alleged errors, the judgment below was for the right party and should accordingly be affirmed. This, for the reason that, under the plain terms of the policies and the conceded facts, the policies had lapsed months before the death of the insured. As a disposition of this contention may render unnecessary a consideration of the other questions raised, it will be taken up first.

For the purposes of the case a consideration of the policy provisions in question can best be approached from the position taken by appellants with respect to them. Their position is that the contract under each of the policies, when considered as a whole, makes the second premium payment fall due one year from the date of the actual delivery of the policy. In support of this they set forth categorically in their brief, under the head of points and authorities, the following propositions:

(1) "The application for the policies sued on in the first to fourth counts, both inclusive, is dated April 28, 1922, predate of policies is April 4, 1922, date of policies is May 16, 1922, and delivery date is May 18, 1922. The application for policy sued on in the fifth count is dated May 24, 1922, policy predated April 4, 1922, date of policy is May 19, 1922, and delivery date is May 24, 1922. The dates are inconsistent, ambiguous and doubtful, and same should be resolved in favor of plaintiffs and against defendant.

(2) ".Where the application or policy provides that the latter shall not take effect until the first premium is paid and the policy delivered, premiums are computed from the time the first premium is paid and the policy actually delivered.

(3) "A provision of a contract of insurance which attempts to bind the insured to the payment of premiums and to exonerate the insurer from a corresponding liability, is unilateral and unenforceable."

Before entering upon a consideration of these postulates, it should be noted that the pleadings have brought to our attention decisions of the Supreme Court of Arkansas and statutes of that state, including one adopting the common law similar to ours. But counsel have not pointed out, nor do we discover, any rule of law of that jurisdiction, applicable to the questions involved in this case, which differs materially from the rules which obtain with us. The appellants, while conceding the applicability of the law of Arkansas, largely rely upon a case decided by this court, Halsey v. Insurance Company,

660

258 Mo. 659, 167 S. W. 951, and cases decided by our courts of appeals which cite the Halsey case as authority for their holdings.

The precise question, determinative of the case, is: When did the second premium payment become due? We will go to the policy declared upon in the first count of the petition, No. 113718, as representative of all of them. It provides: "This contract is made in consideration of . . . the payment of Seven Hundred and 75/100 Dollars, constituting a payment of premium for term insurance ceasing at noon on the 4th day of April, 1923, from which date it may be renewed as an Ordinary Life policy by the payment of like sum on said date." This language is clear and explicit; there can be no doubt as to its meaning: the consideration given for the first payment was *term insurance,* which *ceased* on the 4th day of April, 1923; by the payment of a like sum *on that date* the contract of insurance would be renewed as an ordinary life policy.

But appellants say, and rightly so, that the entire contract, the policy and the application, must be looked to in order to determine when the second premium payment became due. The provision which they stress is as follows: "The contract of insurance shall not be deemed to have been made until the first premium is paid and the policy delivered during the lifetime and good health of the insured." But the policy also stipulates: "After delivery of this policy to the insured it takes effect as of the 4th day of April, 1923." In the original application, made and dated, April 28, 1922, the insured stated "I was born on the 5th day of October, 1883, making my age, *nearest birthday,* 38 years." And in the supplemental application, made and dated, May 18, 1922, contemporaneously with the delivery of the policy, which had been issued May 16, 1922: "I desire my policy to be dated April 4, 1922." In this statement directing the date to be given the policy the insured clearly meant the date as of which the policy should take effect, and not the date of its issuance; he could have meant nothing else, the circumstances considered. From the directions given by the insured in his applications and the stipulations contained in the policy it is entirely clear that the parties intended that the policy should take effect, *after delivery,* as of date April 4, 1922. This, in order presumably that the insured, whose insurable age at the time he made the original application was 39 years, could have the benefit of the lesser premium rate applicable to age 38. But whether or not that was the purpose of setting back the effective date of the policy, it cannot be said that the statements and stipulations just referred to—regardless of their several datings—in any way effect, modify or cast doubt upon the plain provision that the term insurance purchased by the first payment would expire on April 4, 1923, and that the contract could be renewed by the payment on that date of a stipulated second premium.

Appellants say that the payment of $700.75 made by the insured on May 18th, the time when the policy was delivered to him, was the payment of an annual premium, which entitled the insured to a full years' insurance; otherwise, they say, the insured paid for approximately a month and a half's insurance which he did not get. The contention ignores the plain language of the contract. In its inception the contract was not one for life, but an assurance for a term ending on April 4, 1923, at which time it could be converted into a life policy by the payment of a stipulated premium. The first payment is not designated an annual premium, nor is it anywhere referred to as such, in either the policy or the application. On the contrary it clearly purports to be a single premium for limited term insurance.

The insured was a business man of large affairs; no fraud or deceit was practiced upon him. When he accepted the policy on the 18th day of May, 1922, he must have known that for the payment he was then making he was getting nothing more than term insurance for a term beginning on that date and ending April 4, 1923. Whether he was receiving an adequate consideration for the payment rested entirely with him. He may have considered that the securing of the premium rate of age 38, by the predating of the policy, was more beneficial to him than a month and a half's insurance. Whether it was or not is not within our province to determine. Courts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties: they discharge their full duty when they ascertain and give effect to the intentions of the parties, as disclosed by the contract which they have themselves made. [Interstate Bus. Men's Acc. Assn. v. Nichols, 143 Ark. 369; State ex rel. v. Cox, 14 S. W. (2d) 600; State ex rel. v. Trimble, 306 Mo. 295, 267 S. W. 876; State ex rel. v. Trimble, 297 Mo. 659, 249 S. W. 902; Winters v. Insurance Company, 290 S. W. 109.]

What is said in the preceding paragraph as to the enforcement of contracts as made is said with reference to contracts which in no way violate the principles of the law or contravene its policies. The amounts which may be charged for life insurance by way of premiums or otherwise are not fixed or limited by law. But there was in force at the time of the issuance of the policies in question a statute of Arkansas which provided that there should be no discrimination between policyholders with the same expectation of life in respect to the premiums they were required to pay. If the insured under the policy in this case was to be given the benefit of the premium rate applicable to age 38, it was necessary, in order to avoid the prohibited discrimination, that he be required to pay premiums at such rate from a time within which 38 years was in fact his insurable age.

Halsey v. Insurance Company, supra, is clearly distinguishable from the case at bar. Both the facts and the policy provisions in the two cases are different. In the former the policy was dated May 31, 1906, the date of its issuance, but was not delivered until June 5, 1906, when the first annual premium was paid. It was held that, the entire contract considered, the parties intended the deceased to be insured for one full year from June 5, 1906, to the last minute of June 4, 1907. That case is not authority for the position taken by appellants in this.

Under the plain, unambiguous provisions of the policies sued on the term insurance provided by each expired on April 4, 1923; none of the policies was renewed by the payment of a second premium on that date, or within thirty days thereafter; thereupon each, according to its explicit terms, lapsed and ceased to be in force—on the 4th day of May, 1923. The insured died September 26, 1923.

The judgment of the circuit court was for the right party. It is affirmed. All concur.