## DE WALT v. STATE FARM MUT. AUTOMOBILE INS. CO. OF BLOOMINGTON, ILL.

No. 11634.

Circuit Court of Appeals, Eighth Circuit.

May 8, 1940.

Rehearing Denied May 25, 1940.

David A. Thompson, of Richmond, Mo. (Bert S. Kimbrell and Walter W. Calvin, both of Kansas City, Mo., on the brief), for appellant.

Thomas E. Deacy, of Kansas City, Mo. (M. J. Henderson, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by appellant as plaintiff to recover damages for the alleged breach of an automobile liability policy of insurance issued by appellee to appellant on January 23, 1931, covering a sedan Dodge car, and insuring appellant against liability to an amount not exceeding $10,000 for bodily injury or death suffered or alleged to have been suffered by any person other than himself or those of his household, resulting directly from accident by reason of the ownership, maintenance, or use of the automobile. It will be convenient to refer to the parties as they appeared below.

No issue is here made as to the pleadings. On July 30, 1933, while the automobile was being driven by plaintiff's minor son, an accident occurred in which the automobile struck one Elmer Steva and his wife, Cordia Ann Steva, the injuries resulting in Mr. Steva's death. Cordia Ann Steva brought an action for damages against the insured for the alleged wrongful death of her husband. The insured, plaintiff herein, gave notice of the accident to the insurance company and the filing of the action against him, but the company refused to defend on the ground that the policy was not in effect at the time of the accident. The insured entered an appearance in the action and asserted his insolvency and his indifference to whether Mrs. Steva recovered judgment or not. On trial, judgment was secured against the insured in the sum of $10,000.

On October 12, 1936, prior to the institution of the instant action, the insurance company paid Cordia Ann Steva the sum of $4,000 in settlement of its possible liability to her, but neglected to take an assignment or satisfaction of her judgment against DeWalt.

Plaintiff asked judgment in the sum of $7,575, besides damages for vexatious delay, and for attorney fees. For the purpose of facilitating the trial, written stipulation was filed as to certain facts. From this stipulation and from the admissions in the pleadings and from the undisputed testimony, it appears that the defendant, at all times pertinent to the action, was a mutual insurance company organized under the laws of the State of Illinois; that on January 23, 1931, it issued the insurance policy here involved, and mailed it to plaintiff at Hamilton, Missouri, who paid a membership fee of $10 and the sum of $19 to cover the premium deposit to July 23, 1931. By the terms of the policy, premium calls became due and payable on the 23rd days of January and July of each year. On July 25, 1931, plaintiff paid the sum of $7.61 for the premium on the policy from that date to January 23, 1932. On January 23, 1932, he paid the sum of $7.32 for the premium from January 23, 1932, to July 23, 1932. On August 9, 1932, he paid the sum of $7.08 for the premium from July 23, 1932, to January 23, 1933. On January 26, 1933, he paid the sum of $6.86 for the premium from January 23, 1933, to July 23, 1933. The accident occurred on July 30, 1933. On July 29, 1933, plaintiff enclosed a check in an envelope addressed to the defendant and deposited it in a rural mail box in front of his home. This check was payable to the order of the defendant in the sum of $6.66. On or before the 23rd of July, 1933, plaintiff received written notice from the company by special delivery letter that on July 23, 1933, a premium would be due upon his policy. This notice contained a statement that "failure to pay your semi-annual premium call on the date due lapses your policy."

The check mailed to the defendant on July 29, 1933, was not cashed, but was returned to the plaintiff August 9, 1933. The semi-annual premium call due July 23, 1931, was paid by check dated July 25, 1931, and the policy was suspended between July 23 and July 25. The premium due January 23, 1932, was paid January 26, 1932, and the policy was suspended between said dates. The premium due January 23, 1933, was paid January 26, 1933, and the policy was suspended between said dates and was reinstated on January 26, 1933. The records of the insurance company showed that the policy had been lapsed and suspended on July 23, 1933, because the semi-annual premium call due on that date had not been paid by plaintiff.

The policy contains provision that the company, "does hereby insure J. Vern DeWalt, of the City of Hamilton, State of Missouri, hereinafter called the 'Assured' from the 23rd day of January, A. D. 1931, at 12 o'clock noon Standard time for an initial term of six months and for such succeeding terms of six months each as the premium deposit is restored as required by this policy and the application therefor, subject to the terms and conditions of this policy * * *." In paragraph (9) of the policy it is recited that: "* * * (B) This entire policy shall automatically and immediately be void without notice of cancellation or notice of any other kind: (1) If there shall be default of any kind, or for any reason whatsoever, in payment of the check given for the membership fee or premium deposit when the same is due and presented for payment; (2) If the Assured or his agent defaults in his obligation to make any other payment legally required of him by the Board of Directors to meet his share of the losses, expenses and liabilities of the Company as set forth

in paragraph (14) of this policy within thirty days after notice of such payment due is given in writing. (C) If Assured shall be in default in the payment of either the original membership fee or premium deposit or of any other payment, the Company may, at its option, accept said payment, but the making of said payment and the receipt thereof by the Company shall in no case revive or create any liability against the Company for loss occurring while the Assured was so in default and the policy void."

Paragraph (14) provides, among other things, that the assured by accepting the policy becomes a member of the company; that he agrees to make the payments provided for therein, and that: "The premium deposit set out in this policy is for an insurance expiring six (6) months from the date of issuance of the policy and for the successive six (6) months periods for which the premium deposit is restored. If, for the purpose of restoring the premium deposit, the Assured shall pay his share of the losses, expenses and liabilities as required by the Board of Directors, the insurance shall be renewed automatically for the six (6) months period from the expiration of the preceding six (6) months period. Such premium deposit shall be treated as earned pro rata during each six (6) months period."

The court directed a verdict for the defendant, and from the judgment entered thereon this appeal is prosecuted.

The determining question is whether the court erred in directing a verdict. The lower court expressed the view that there was no ambiguity in the terms of the policy; that under its terms default in the payment of premium automatically rendered the policy void; that the policy was for a definite term; that although the policy did not require it, the assured had been given written notice that the policy had expired July 23, 1933, for failure to make payment of premiums; that he had received this notice before he mailed a check on the 29th of July, which was not received until the 31st of July.

When the insured made his initial premium payment on January 23, 1931, he was entitled to six months' insurance expiring July 23, 1931. The insurance expired on that date unless prior thereto another premium payment were made, which would carry it for another six months. When the premium payments were not made at or prior to the date of the expiration of the policy, it lapsed, and subsequent payments, at the option of the company, effected a restoration of the policy, but no liability attached during the interim of default.

It seems to be the contention of the plaintiff that having paid a number of premiums a few days late, and the policy being suspended for those days, that the insurance should be considered as having been extended for a period equal to the total number of suspended days during which he did not have protection. It is admitted that nothing in the policy would warrant such conclusion, but it is claimed that under the decisions of the Supreme Court of Missouri, particularly the case of Halsey v. American Central Life Ins. Co., 258 Mo. 659, 167 S.W. 951, 952, plaintiff was entitled to six months' insurance for six months' premium, and that unless this be true, he received no consideration for at least a part of the premiums paid.

It is important to bear in mind that there are no ambiguities in the provisions of this policy. If the six months premium were not paid, and the policy thereupon lapsed, a payment of premium thereafter renewed the policy for the "six months period from the expiration of the preceding six months period." The policy specifically provides that in consideration of the payment of the membership fee and of the initial premium deposit, the insured became a member of the company and was granted insurance protection for a definite period. With equal definiteness, it provides that in the event the premium deposit be restored to its original amount, the insurance should be renewed automatically for a further definite period, to-wit, six months "from the expiration of the preceding six months period." In the Halsey case, strongly relied upon by appellant, there was an ambiguity in the insurance contract. The policy in that case was issued and dated May 31, 1906. It was delivered to the insured and the first premium paid June 5, 1906. The application, which provided that the application and policy taken together should constitute the entire contract, contained provision that "the annual premium to be made payable in advance on the 24th day of May," and "that there shall be no contract of insurance until a policy shall have been issued and delivered to me when in good

health, and the premium paid to said company or its duly authorized agent during my lifetime." On May 31, 1907, the second annual premium was tendered, but was refused on the ground that the policy had lapsed. The question in that case was when the policy became effective. The application stated one date, the policy recited another, and then there was a recital that the policy should not become effective until delivered and the first premium paid while the insured was in good health. The Supreme Court of Missouri held that under the exact terms of the contract, the insured was insured for one full year from June 5, 1906. The court also held that: "This very act of the parties, under the facts and circumstances in the case, puts a practical construction upon the contract made and entered into between them, namely: That each succeeding annual premium should be paid during the life of the policy, and thereby keep it in full force and effect for the period of time stated therein."

In National City Bank v. Missouri State Life Insurance Co., 332 Mo. 182, 57 S.W.2d 1066, 1068, the Supreme Court of Missouri, construing the decision in the Halsey case, said that the holding in that case was in effect that "if the policy provides for the payment of premiums annually, semiannually, or quarterly, on or before certain days, occurring periodically after the date of the policy, and if the policy further provides that it shall not take effect until it is delivered and the first premium paid, and if in a given case a policy is delivered and the first premium is paid on a day subsequent to the date, then in the event of an issue of liability for want of timely payment of premiums, the premium paying periods are to be determined from the date of delivery of the policy and of payment of the first premium."

This interpretation of the Halsey case was reiterated in Tabler v. General American Life Insurance Co., 342 Mo. 726,. 117 S.W.2d 278.

In the instant case, the policy provides for term insurance, and the parties have definitely agreed that the premium paid will carry the insurance only to a definite future time. This places it squarely within the decisions of the Supreme Court of Missouri. Prange v. International Life Ins. Co., 329 Mo. 651, 46 S.W.2d 523, 526, 80 A.L.R. 950; National City Bank v. Missouri State Life Ins. Co., supra. In the Prange case it is said:

"Appellants say that the payment of $700.75 made by the insured on May 18th, the time when the policy was delivered to him,· was the payment of an annual premium, which entitled the insurer to a full year's insurance; otherwise, they say, the insured paid for approximately a month and a half's insurance which he did not get. The contention ignores the plain language of the contract. In its inception the contract was not one for life, but an assurance for a term ending on April 4, 1923, at which time it could be converted into a life policy by the payment of a stipulated premium. The first payment is not designated an annual premium, nor is it anywhere referred to as such, in either the policy or the application. On the contrary, it clearly purports to be a single premium for limited term insurance. * * *

"Halsey v. Insurance Co., supra, is clearly distinguishable from the case at bar. Both the facts and the policy provisions in the two cases are different. In the former the policy was dated May 31, 1906, the date of its issuance, but was not delivered until June 5, 1906, when the first annual premium was paid. It was held that, the entire contract considered, the parties intended the deceased to be insured for one full year from June 5, 1906, to the last minute of June 4, 1907. That case is not authority for the position taken by appellants in this.

"Under the plain unambiguous provisions of the policies sued on, the term insurance provided by each expired on April 4, 1923; none of the policies was renewed by the payment of a second premium on that date, or within thirty days thereafter; thereupon each, according to its explicit terms, lapsed and ceased to be in force on the 4th day of May, 1923. The insured died September 26, 1923."

In National City Bank v. Missouri State Life Insurance Co., supra, a similar question was presented, and the rule in the Halsey case was urged upon the court. In the course of the opinion in that case the court, distinguishing the Halsey case, said that the case should be ruled by the Prange case. The court said, in discussing the rule laid down in the Halsey case: "But the basis of this rule, in every instance,. is some conflict of provisions in the particular policy in suit."

The court held that inasmuch as the policy provided for a definite term and for definite dates upon which premiums should

be payable and provided that the policy should end and cease at a certain definite time, the rule in the Halsey case was not applicable. But it is said that the insured was entitled to six months' protection for six months' premium. We have already adverted to the fact that the renewal periods were definitely limited to a succeeding six months period "from the expiration of the preceding six months period." If the insured did not receive protection for all the days of each six months period, it was the result of his own negligence. He was fully aware of the terms and conditions of his contract and he has brought suit thereon. As said by the Supreme Court in the Prange case, "whether he was receiving an adequate consideration for the payment rested entirely with him." As pointed out by the lower court, there was consideration passing to the insured during the period he was receiving no protection. He had the right upon payment and acceptance of his premium to insurance during the balance of the six months period upon the particular automobile described in the policy without further application without determination of the question as to whether he was still a good insurable risk, or whether the automobile was still an insurable one. He was entitled to insurance at the same rate as when the policy was originally issued. He remained a member of the company. No new membership was required, and he had the benefit of the unused portion of the original premium deposit of $19. Had his membership in the company terminated with the lapse of his policy, the unearned portion of his premium deposit would have been forfeited, as well as his membership fee. Had he been required to take out a new policy, it would have been necessary for him to pay $10 for a new membership and to make a new premium deposit of $19, whereas he could renew the policy for six months from the date of expiration for from $6 to $8. It is also worthy of note that permitting the policy to become in default imposed additional burdens upon the insurance company.

We are of the view that the parties had the right to make the contract which they entered into. It was without ambiguity and it is not the province of the court to re-write it. Under the undisputed facts it had lapsed before the date of the automobile accident. The lower court therefore committed no error in directing a verdict for the defendant, and the judgment appealed from is affirmed.