HARRY B. HOWARD, Appellant, v. AETNA LIFE INSURANCE COMPANY. —No. 37854.—164 S. W. (2d) 360.

Division One, June 3, 1942.

Rehearing Denied, July 28, 1942.

Motion to Transfer to Banc Overruled, September 8, 1942.

18

*Butler, Howard & Campbell, Haywood Scott* and *John W. Scott* for appellant.

*D. P. Cavanaugh, Ray Bond* and *John S. Bond* for respondent.

BRADLEY, C.—Action on a life insurance policy for $10,000, with a double indemnity provision covering accidental death, and for penalty and attorney's fee because of alleged vexatious refusal to pay. What we may term a demurrer to the evidence was sustained at the close of the case; a directed verdict returned for defendant; judgment for defendant entered thereon, and plaintiff appealed.

We might state here that this is the second appeal in this case.

When first up the trial court sustained a demurrer to the petition and plaintiff appealed. It was held that the petition stated a cause of action, and the judgment was reversed and the cause remanded. See Howard v. Aetna Life Ins. Co., 346 Mo. 1062, 145 S. W. (2d) 113.

The insured was Henry Erle Wise, the beneficiary, his wife, Chloe T. Wise. Application for the policy was made June 29, 1932, and the policy was dated June 28, 1932, but was actually written July 23, 1932, and the first quarterly premium paid September 10, 1932, and a second quarterly premium paid October 28, 1932. The insured died April 5, 1933, and the policy was assigned to plaintiff. The sole question is whether the policy was in force at the time of the death of the insured. Plaintiff contends that the policy did not become in effect until the first quarterly premium was paid on September 10, 1932, and that the first quarterly premium carried the policy from September 10 to December 10, 1932, and that the second quarterly premium carried the policy from December 10, 1932, to March 10, 1933, and that by reason of the 31 days grace provision the policy was in force at the time of the insured's death on April 5, 1933.

On the other hand, defendant contends that the insured, for premium paying purposes, was bound by the date of the policy and that the first quarterly premium carried the policy from June 28, 1932, to September 28, 1932, and that the grace provision kept the policy alive from September 28, to October 28, 1932, and that the payment of the second quarterly premium carried the policy from September 28, 1932 to December 28, 1932, and that the policy lapsed 31 days after December 28, 1932.

Defendant, in the brief, says: ''Where a policy of life insurance provides for the payment of periodical premiums at certain dates specified in the policy, and beginning with the date of the policy, and the policy further provides that it shall not become effective until the first premium upon the policy has been paid, or until the policy is delivered and the first premium is paid, and where, under such policy, the first premium is actually paid at a date subsequent to the date of the policy, then, in the absence of evidence showing the real intention of the parties or the construction placed upon the contract by the parties, the court will construe the policy in favor of the insured as against the insurer, and will hold that the first payment of premium maintains the policy in effect for the full period from the date of payment of same paid for by such premium. If, however, as in this case, the parties to the contract, by their conduct in carrying out the contract, or by the circumstances surrounding the issuance of the policy, have placed a different construction upon the contract, then the court will adopt the construction placed upon the contract by the parties themselves.''

 Insured was defendant's local agent at Joplin, Missouri, and filled out his own application. As stated, the application was made

June 29, 1932, and in the application insured stated that he was born December 31, 1886, and that his age at nearest birthday was 45. Also, the insured wrote in the application some amount as the quarterly premium, but the figures he inserted were erased and $50.80 written over. It does not appear who made the change, but it is, in effect, conceded that the ''50.80'' was not written in by the insured. A family Bible entry, some 25 years old, and made by insured's mother, showed that insured was born December 31, 1887, instead of 1886, as stated by the insured, but that is not important, so far as concerns the question as to whether the policy was in force at the time of insured's death. If insured was born December 31, 1886, his age at nearest birthday, on June 29, 1932, when he filled out the application, was 45, as he stated in the application, but on July 1st, two days after the application was filled out, his nearest birthday was 46.

Defendant's witness, Richards, who had charge of ''the actual writing of policies,'' was permitted to testify that he construed the application to mean that the policy was to be given a date so that the insured's quarterly premium would be based on age 45. Over objection and exception Richards testified: ''Q. What rule of the Aetna Life Insurance Company in force in 1932 required that this policy be dated June 28, 1932? A. The printed rules of the company which have been introduced in evidence indicated what date we will give a policy if no special request is made, but where a special request is made, we will date the policy the date requested. In this particular case, the application, and the application work sheet, indicated that the policy was to be given a date so that the applicant would obtain insuring age 45, and wherever an application for insurance indicates by its terms that insurance at a certain age is contemplated, our rules and practices require that we date the policy so as to comply with the intention of the applicant for insurance.'' We might say that reference to ''the application work sheet'' was stricken.

Defendant, with its letter of September 10, 1932, acknowledging payment of the first quarterly premium, enclosed a premium notice stating that the second quarterly premium would be due September 28, 1932. About October 27, and before the lapse of 31 days after September 28, the insured asked defendant's general agent in Kansas City to charge the second quarterly premium, less agent's commission on the policy, to his (insured's) commission account. This was done and receipt for the second quarterly premium issued. About December 8, 1932, defendant mailed to insured a premium notice that the third quarterly premium would be due December 28, 1932. No further premium was paid, and defendant says the policy lapsed January 28, 1933, 31 days after December 28, 1932.

Defendant, in the answer, pleaded the extrinsic facts upon which it relied to establish that premium payments properly dated from June 28, 1932, and not September 10, 1932, when the first quarterly premium

was actually paid, and the policy delivered. Plaintiff moved to strike such pleading from the answer, but was overruled. The grounds of the motion to strike were that such facts constituted no defense; that such pleading was an attempt to vary and contradict the terms of a written contract.

The application provided that the policy would not "become effective until the first premium upon it is paid during the good health of the insured."

Paragraph No. 1 of the policy provided that the agreement to pay the amount of the policy, etc., was "made in consideration of the quarterly premium of fifty dollars and eighty cents to be paid to the company on or before the twenty-eighth day of June, September, December and March in each and every year for five years, and of the quarterly premium of ninety-three dollars and ninety cents payable under the same conditions thereafter, during the lifetime of the insured."

Paragraph 4 provided that if the insured died "within the grace period, the premium, if unpaid, will be deducted from the amount payable hereunder." And paragraph 4 further provided: "This policy shall not become effective until the first premium upon it is paid during the good health of the insured."

Paragraph 12 provides: "If the age of the insured has been misstated the amount payable hereunder shall be such an amount as the premium paid would have purchased at the company's published rate now in use for the correct age. Age will be admitted on proof satisfactory to the company."

Paragraph 16 provides: "All agreements made by the company are signed by its president, vice president, secretary, assistant secretary, treasurer or assistant treasurer. No other person can alter or waive any of the conditions of this policy, extend the time for paying a premium or make any agreement which shall be binding upon the company."

To support its defense defendant relies upon Prange et al. v. International Life Insurance Co., 329 Mo. 651, 46 S. W. (2d) 523, l. c. 526, 80 A. L. R. 950; National City Bank v. Missouri State Life Ins. Co., 332 Mo. 182, 57 S. W. (2d) 1066; Scotten v. Met. Life Ins. Co., 336 Mo. 724, 81 S. W. (2d) 313; Tabler v. General American Life Ins. Co., 342 Mo. 726, 117 S. W. (2d) 278; Howard v. Aetna Life Ins. Co., 346 Mo. 1062, 145 S. W. (2d) 113, 114, 115, 116; Tucker v. Equitable Life Assurance Society (8th Cir.), 36 Fed. Supp. 809, 126 Fed. (2d) 396; Evans v. Equitable Life Assurance Society (Mo. App.), 109 S. W. (2d) 380; Medlin v. American Bankers' Ins. Co., 227 Mo. App. 705, 59 S. W. (2d) 738; Winters v. Reserve Loan Life Ins. Co., 221 Mo. App. 519, 290 S. W. 109.

In the Prange case, supra, the insured, on April 28, 1922, made application for $100,000 insurance to be written in four policies of $25,000 each. In the application the insured stated that he was born

October 5, 1883, and that his age at nearest birthday was 38 years. At the time of making the application it was pointed out to the insured by the soliciting agent that his nearest birthday was October 5, 1922, at which time he would be 39, but that if policies were made "to take effect prior to April 5, 1922, he could have the benefit of the rate" at age 38. The policies were written and were dated May 16, 1922, and sent to the agent. Accompanying them was a supplemental application dated May 18, 1922, which the insured signed. In the supplemental application it was stated: "I desire my policies to be dated April 4, 1922." The insured applied for and got a fifth policy for $12,500, and expressly agreed "that the additional insurance applied for shall take effect as of the 4th day of April, 1922." Each policy provided [46 S. W. (2d) l. c. 524]: "After delivery of this policy to the insured it takes effect as of the fourth day of April, 1922. The contract of insurance shall not be deemed to have been made until the first premium is paid and the policy delivered during the lifetime and good health of the insured."

The first four policies were delivered and the first annual premiums thereon paid on May 18, 1922, and on May 24, 1922, the fifth policy was delivered and the first annual premium paid. No further payments were made, and the policies lapsed, according to the insurer, on May 4, 1923. The insured died September 26, 1923. The plaintiffs contended that the premiums paid May 18th and 24th carried the respective policies for one year, and that the grace period of 31 days kept the policies alive for 31 days subsequent to May 18th and 24th respectively, and that the insurer wrongfully lapsed the policies on May 4, 1923, and was liable. It was held that, from the entire contract, the application and the policy, recovery could not be had on the policies, but it will be observed that the precaution was taken in a supplemental application to have the insured specifically ask that the policies "be dated April 4, 1922."

And the following was said in the Prange case [46 S. W. (2d) l. c. 526]: "The insured was a business man of large affairs; no fraud or deceit was practiced upon him. When he accepted the policy on the 18th day of May, 1922, he must have known that for the payment he was then making he was getting nothing more than term insurance for a term beginning on that date and ending April 4, 1923. Whether he was receiving an adequate consideration for the payment rested entirely with him. He may have considered that the securing of the premium rate of age thirty-eight, by the predating of the policy, was more beneficial to him than a month and a half's insurance. Whether it was or not is not within our province to determine. Courts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties; they discharge their full duty when they ascertain and give effect to the

intentions of the parties, as disclosed by the contract which they have themselves made.''

In the National City Bank case, supra, the application was for a five year term policy and made March 19, 1923; premiums were payable semiannually; the policy was dated March 19, 1923, and was delivered March 30, 1923; first semiannual premium was paid May 23, 1923. The payment was actually made by the company agent, and the insured did not repay the agent until January 2, 1924. Plaintiff contended that semiannual premiums were payable May 23, and November 23, while defendant contends that premium paying dates were March 19, and September 19. The insured died November 19, 1926. The policy had 31 days grace provision, but if premium paying dates were as claimed by defendant, the policy had lapsed at time of insured's death, but if as claimed by plaintiff, the policy was in force. The application provided that if the first premium was not paid to the agent at time of application the insurance would not be ''effective until the policy is delivered to and accepted by me and the first premium thereon actually paid during my lifetime and continued good health.''

It was held that the insurer ''waived the prompt payment of the first'' semiannual premium, and that the policy ''took effect from its delivery on March 30, 1923.'' It was held, however, that the semiannual premium payments were due March 19, and September 19, as claimed by the insurer, and that plaintiff could not recover. The court decided the case on ''the principles applied'' to the Prange case, and quoted from that case the excerpt we have set out, supra.

In the National City Bank case the court said this [57 S. W. (2d) l. c. 1069]: ''We know that the application provides that, if the first premium be not paid to the agent at the time of making application, the insurance shall not be effective until the policy is delivered and accepted by the insured and the first premium paid. But we are dealing with what respondent treats as inconsistent provisions. And we do not believe that the failure of Riley to pay the first premium when the policy was delivered should move us to give to the contract made a more liberal construction than our courts have sanctioned heretofore in order to save respondent from the consequences of the nonpayment of premiums upon the specific days stated in the policy.'' Also, the fact that the policy involved was a term policy as in the Prange case, seemed to be of consequence in ruling the case. The court said this [57 S. W. (2d) l. c. 1069]:

''Another reason why respondent should be outside the rules and principles of the Halsey and McMaster cases is that those were suits upon policies payable in the event of death whenever it occurred. This is a suit upon a term policy of insurance payable upon the death of Riley, 'provided such death shall occur within the term of five years from March 19, 1923.' ''

In the Scotten case, supra, it was held [81 S. W. (2d) l. c. 315]

that "on the face of the policy" there was "a reasonable doubt as to the date the annual premium was due," and such being the case, the court accepted the construction placed upon the policy by the parties. We consider, infra, the subject of ambiguity as to the present policy.

The policy involved in the Tabler case, supra, was issued without any application being made, and it was held that the insured "must have decided to accept it on the basis of its terms." Such was not the situation in the present case.

. The Evans case, supra, was decided, as we read the opinion, on the theory that there was an ambiguity as to the correct date for premium payments and that in such situation the construction placed upon the policy by the parties would be adopted by the court. The opinion quotes [109 S. W. (2d) l. c. 384] from the Scotten case, the same as we do, supra.

In the Winters case, supra, it appears that on February 27, 1904, insured took out a 20 year pay policy for $5,000. In January, 1916, he borrowed $970 on the policy. The premium due February 27, 1916, was paid by notes, the last of which was for $125.60, due November 27, 1916. The loan was extended to January 27, 1917. Shortly before January 22, 1917, the insured made application to defendant for a new policy; sent the old policy to the company and asked for "a standard provision nonparticipating policy for $5,000 on the Lt'd. pay single premium plan on which the premium hereafter will be $131.45 per annum; said substituted policy *to be dated* February 26, 1916, at age 37 . . ." It was held that the policy date controlled. The court said [290 S. W. l. c. 112]:

"Plaintiff contends that the policy in suit is covered by the cases of Halsey v. Ins. Co., 258 Mo. 659, 167 S. W. 951; Johnson v. Ins. Co., 212 Mo. App. 299, 249 S. W. 115; and Landrigan v. Ins. Co., 211 ▮▮▮ Mo. App. 89, 245 S. W. 382, and like cases. These cases hold that, where there is a difference as to the time stipulated that the premium is to be paid and the time when the insurance is to go into effect, the latter controls, for, when the insured has paid a full year's premium, he is entitled to a full year's insurance in return therefor; that under such circumstances, to give such a stipulation controlling effect would result in the insured's obtaining less than a full year's insurance on the payment of a full year's premium, ending in insured's not obtaining full consideration for the premium paid. . . . We do not think that the rule laid down in the Halsey and other cases mentioned has any application to the facts involved herein. There was ample consideration for the antedating of the policy. Johnson v. Life Ins. Co. (C. C. A.), 143 F. 950. Negotiations for the new policy were commenced by insured, who for some reason desired to discontinue his old policy and to take out a new one. He was indebted to the insurance company, and wanted this indebtedness canceled, and desired that the premium on his new policy be based

on the age of 37 years instead of his true age, which was 38, thus reducing the amount of the premium that was necessary to be paid.''

Manifestly, the Winters case is not in point on the question in the present case. It is comparable to the Prange case.

In the Medlin case, supra, the application was dated April 24, 1923; the policy was delivered May 12, 1923, and was dated November 9, 1923. A special premium was paid for what is called interim insurance from May 9, 1923 to November 9, 1923, but the policy was not delivered until 4 or 5 weeks after the interim or term insurance was to begin. The contention on the part of plaintiff was that, in the situation, the term insurance was extended beyond November 9, 1923, and that the effective date of the life policy was likewise extended beyond November 9, 1923. The court, in ruling against this contention, said [59 S. W. (2d) l. c. 740]:

''For some reason not revealed by the record, the insured in this case desired to have the premium date on his policy fall due in November, while the application for the policy was made in April. Plaintiff was a farmer and perhaps desired the insurance premium to fall due at a convenient time after harvest. Whatever the reason was, he paid a special premium for the 'interim' term insurance and accepted the policy with the provision that the interim insurance was to be effective from the 9th day of May, 1923, to the 9th day of November, 1923.''

In the Equitable Life case, supra, the question was whether, under Missouri law, the five year term policy expired April 6, 1940, the anniversary of the date when the first premium was actually paid. The insured died April 15, 1940. The policy provided that ''the first policy year, under this policy, shall begin on the register date stated on the back of this policy and the second and subsequent policy years shall begin on the respective anniversaries of the register date.'' In the application, a copy of which was attached to and was a part of the policy, was this clause: ''I hereby agree that any policy issued hereon shall not take effect until the first premium thereunder has been paid during my good health.'' The premium on the policy was payable monthly, and the receipt issued April 20, 1935, for the first monthly premium recited: ''Insurance, subject to the terms and conditions of the policy contract, shall take effect as of the date of this receipt.'' Both the district court and the circuit court of appeals held that the policy took effect on April 20th, date first premium was paid. The court said [126 Fed. (2d) l. c. 401]:

''In the present case appellant gives as the reason for the predating of the policy, not that the insured requested it, but simply that it was done 'in accordance with the defendant's practice of dating a policy two days prior to the date on which an applicant's age would change.' . . . The dates when the subsequent premiums were paid, as set out above, are as consistent with a recognition of the effective date of the policy being April 20th as with it being April 6th, and cannot

therefore be held to constitute conduct which bound the insured to 'the theory that the date of the policy controlled.' "

On the first appeal of the present case it was said [145 S. W. (2d) l. c. 115-116]: "By the express terms of the policy and the application the insurance did not become effective until September 10, 1932. Two quarterly premiums were paid. Insured died April 5, 1933. Six months and thirty-one days of grace kept the policy in force until April 10, 1933. We hold, therefore, that under the plain terms of the contract of insurance, that is, the application and the policy, the insured died within the time that the policy was in force. This ruling is supported by the following cases: Halsey v. American Cent. Life Ins. Co., 258 Mo. 650, 167 S. W. 951; Newman v. John Hancock Mut. Life Ins. Co. (Mo. App.), 7 S. W. (2d) 1015, l. c. 1017 (1); Hampe v. Metropolitan Life Ins. Co. (Mo. App.), 21 S. W. (2d) 926. The cases relied on by respondent, and which we have reviewed, also lend support to the conclusion we have reached. If the date of the policy is to control, then why all the discussion in those cases with reference to the provisions that the insurance shall not be in force until the policy be delivered and the premium paid? In each case where this court held that the date of the policy controlled as to premium paying dates there was an express agreement for a valuable consideration, such as predating the policy to get the benefit of a lower rate, as in the Tabler and Prange cases, supra, or they were cases where the conduct of the parties bound them to the theory that the date of the policy controlled, as in the case of Scotten v. Metropolitan Life Insurance Co., supra. Respondent says that this court refused to follow the Halsey case in its later decisions. We do not find where the Halsey case has been overruled. It has been distinguished in a number of cases, but not disapproved. The case before us also differs from the cases where the policy provided that it should not be effective until delivered and the first premium paid, and the policy was delivered but the premium paid later. In such cases this court held that the delivery of the policy was the effective date and that the company had waived the provision as to the payment of the premium. However, in the case before us the payment of the premium was made the only event upon which the insurance should be in effect."

 There was no ground whatever for the admission of evidence, in the present case, as to how the parties construed the policy. The policy was plain and unambiguous as to *when* it became effective. The application and the policy constituted the *contract*, and both provided that the policy become effective upon payment of the first premium during the good health of the insured. "It is a well established rule of law that the construction placed upon a contract by the parties as evidenced by acts, conduct, or declarations indicating a mutual intent and understanding will be adopted by the courts where the language of the contract is ambiguous, or there is a reasonable doubt as to its meaning, but not where it is plain and unambiguous."

Scotten v. Met. Life Ins. Co., 336 Mo. 724, 81 S. W. (2d) 313, 1. c. 315, and cases there cited. See also, Tomnitz v. Employers' Liability Assurance Corp., 343 Mo. 321, 121 S. W. (2d) 745, 1. c. 750; Schweizer v. Patton et al. (Mo. Sup.), 116 S. W. (2d) 39, 1. c. 41.

▮ Sec. 6040, R. S. 1939, 6 Ann. Stat. (1929), Sec. 5929, p. 4515, provides that if an insurance company "has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee," and as appears, supra, plaintiff asks for these additional damages. Sec. 6040 is highly penal and is strictly construed. Aufrichtig v. Columbian Nat. Life Ins. Co., 298 Mo. 1, 249 S. W. 912, 1. c. 916. See also, Lemay Ferry Bank v. New Amsterdam Casualty Co. et al., 347 Mo. 793, 149 S. W. (2d) 328, 1. c. 331. It cannot be fairly said that defendant's refusal to pay, after the prior opinion of this court, was not vexatious within the meaning of Sec. 6040, but the general rule is that the vexatious conduct must be before the suit is filed. State ex rel. Northwestern Nat. Ins. Co. v. Trimble et al., 322 Mo. 1236, 18 S. W. (2d) 21; State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 298 S. W. 83, 1. c. 91.

It will be noted that the penalty provided by Sec. 6040 for vexatious refusal to pay does not go as a matter of course, if it be found that the refusal was vexatious, but that it is discretionary. Sec. 6040 should not be invoked to intimidate a good faith defense. Vexatious refusal to pay contemplated by the statute is not to be deduced from the mere fact that a verdict went against the insurer. The insurer is allowed to entertain an honest difference of opinion as to its liability and the extent thereof. Vexatiously, as used in Sec. 6040, means without reasonable or probable cause. Camdenton Consol. School Dist. ex rel. Powell Lbr. Co. v. New York Casualty Co., 340 Mo. 1070, 104 S. W. (2d) 319, 1. c. 331. We do not think that substantial justice would be denied to hold that the penalty provided by Sec. 6040 be not applied and we so rule.

It is conceded that the insured was killed in an accident and that if defendant is liable on the policy, the double indemnity provision ▮ is applicable. Therefore, the judgment should be reversed and the cause remanded with direction to enter judgment for plaintiff as asked in the petition, except as to penalty for alleged vexatious refusal to pay. It is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur.