**LONG**

v.

**COMMERCIAL TRAVELERS INS. CO.**

**Civ. No. 4006.**

United States District Court,
D. Colorado.

Aug. 6, 1954.

W. Russell Eddy and S. T. Anderson, Denver, Colo., for plaintiff.

Wood & Ris and William K. Ris, Denver, Colo., for defendant.

CHRISTENSON, District Judge.

This is an action on an accident and health insurance policy brought by the beneficiary, who is surviving widow of the insured. It is admitted that the policy was duly issued for a valuable consideration and that the death of the insured occurred through accidental means. The sole question dividing the parties is whether the first and only premium paid covered the period of one year, and a fifteen days' grace period, from the issuance of the policy as of June 19, 1950, in which event death occurred when the policy was in full force and effect, or whether such premium kept the policy in force only until the end of the fifteen days' grace period following June 1, 1951, the expiration date of the first term expressed in the policy, in which event the policy had expired on June 19, 1951, the date of the death of the insured.

The policy contains the following provisions deemed material by one or both of the parties:[1]

"Commercial Travelers Insurance Company * * * does hereby insure William E. Long, herein referred to as the insured, to the extent herein provided and endorsed herein or attached hereto, against loss in any part of the world resulting from * * *

"(1) Accidental bodily injury sustained by the Insured while this policy is in force * * *

"Schedule of Benefits

"Part B

"1. Special Ten-Year Cash Bonus. For any term of ten consecutive years, from date of issue or from the first renewal date subsequent to the payment of a claim, that this policy is maintained in continuous force and no claim has been paid or loss incurred, the Company will pay to the Insured a Cash Bonus of *Four Hundred* Dollars.

Payment of this Cash Bonus shall mature and terminate this policy.

"2. Guaranteed Premium Reduction and Annual Dividend. Premiums after the first year shall be reduced by a Guaranteed Reduction of *$20.00* and such dividends as may be declared by the Board of Directors based upon the earnings and savings of the Company. This policy is issued in consideration of the statements in the application for this policy, a copy of which is attached hereto and made a part hereof, and the first payment of *$87.00* to maintain this policy in force for the term from the effective date hereof until the first day of *June, 1951*. This policy may be renewed for successive terms, as herein provided, by the payment in advance of the renewal *Annual* premium of the amount of the first payment less any reductions and dividends.

"Countersigned Salt Lake City, Utah, as of June 19, 1950
"(Effective Date) * * *

"This policy is guaranteed renewable during any period the Insured is qualifying for the Special Ten Year Cash Bonus. The payment of such Bonus matures and terminates this policy, but its renewal on the next succeeding premium due date following a claim payment shall be at the option of the Company * * *

"Grace Period

"Part J

"A grace period of fifteen days will be allowed for the payment of renewal premiums to the Company, during which period the insurance shall continue in full force * * *

"Reductions, Limitations, and Exceptions

"5. No reduction of the benefits of this policy shall be made during the lifetime of the Insured on ac-

---

[1]. Summaries of some of these provisions as they appear on the margin of the policy have been omitted as they do not modify the meaning of the paragraphs quoted.

count of his age, except that if he is fifty years of age or older on the effective date of this policy, or when he attains age fifty, thereupon all benefits payable hereunder, except the Special Ten Year Cash Bonus, shall be reduced ten per cent per annum for five consecutive years, commencing one year from the effective date or at age 50 if later, with no other reduction thereafter on account of age * * *

"General Provisions

"4. The first premium under this policy is equal to the first payment stated in Part B–2 less a registration fee of the amount of the Guaranteed Premium Reduction."

Since the case was submitted without other evidence, the Court must look to the policy itself and to the following stipulated facts for a solution to the problem:

On June 19, 1950, the assured made application to the defendant company for the policy in question and simultaneously made payment of $87 in consideration of the issuance of the policy. Thereafter the policy was issued containing the provisions set out above, inter alia, and was delivered to the assured. Prior to June 1, 1951, defendant transmitted a premium notice to the insured, and upon the receipt of the same the plaintiff beneficiary, for and on behalf of the insured, wrote and mailed to defendant the following communication:

"I do not wish to carry this insurance so if I have any refund please mail it to me. Thank you. Wm. E. Long, 326–4th St., Benthous, Colo."

Upon receipt of this communication the defendant mailed to plaintiff a letter under date of May 25, 1951, the body of which read:

"We are in receipt of your notation of recent date in which you requested that we cancel your accident and health policy and make a refund to you.

"For your information this policy does not have a cash value or an amount which may be refunded to you except at the end of ten years, completed without a claim, you would receive a bonus. This bonus represents a substantial part of the premium payments placed in the plan. In view of the fact that you have continued the policy in force since June, 1950, I certainly recommend that you complete the ten years."

No other communication was had between plaintiff, or the insured, and the defendant following delivery of the policy and prior to June 19, 1951, when the insured was accidentally killed, and no other premium payment, except the $87 mentioned, was made. The defendant declined to make payment under the policy.

In her complaint plaintiff alleges "that to defraud plaintiff of her rightful interest as beneficiary under said policy defendant wilfully and with intent to defraud plaintiff caused said policy to provide for but eleven months and twelve days' insurance instead of the twelve months' insurance for which application was made and premium paid." Aside from the policy itself there is no evidence of what the understanding of the parties was. Certainly there is no showing of the alleged fraud, except as it may be discerned within the four corners of the policy. If the policy indicates that the first premium was to cover a term beyond June 1, 1951, plus the grace period, the plaintiff would be entitled to judgment, not because of any independent evidence of fraud, but because the policy, interpreted in light of the rules hereinafter mentioned, so provided. The other exhibits and the stipulated facts are consistent with both the plaintiff's and defendant's positions as to the meaning of the policy. In this respect the present case is unlike McMaster v. New York Life Insurance Company, 183 U.S. 25, 22 S.Ct. 10, 46 L.Ed. 64, where there was shown, and found, a specific understanding, apart from the policy, that the first premium would cover an entire year commencing upon the delivery of the

policy and not at an earlier date as there contended for by the company.

■ Turning, then, to the policy itself, the first inquiry concerns the rules by which such policies should be construed. These, in general, seem not in dispute between the parties, nor among the authorities: that in the absence of statute there is nothing to prevent the parties from contracting as they will (and there seems to be no Colorado statute in force during times material herein which affects the problem); that the contract of insurance should be construed to carry out the mutual intent of the parties as it existed when the contract was entered into; that the construction should be fair, reasonable and sensible, *giving effect to, and harmonizing, if possible, all of the terms of the policy;* and that in case of ambiguity or doubt in meaning it is to be construed favorably to the insured. It is in the application of these rules that difficulty is encountered.

■ The authorities clearly indicate one test by which the period covered by a policy, in the event of ambiguity, may be measured. When there is conflict between a policy provision indicating that a premium is an "annual" or "monthly" premium, and one indicating that it is for a term less than such annual or monthly period, an interpretation favorable to the assured will be adopted so as to extend the term for the full period corresponding to the premium designated, even beyond the expressed expiration date; but where there is no indication in the policy that a yearly or monthly term is contemplated corresponding to the premium payment in question, the expiration date specifically set out in the policy will control.

Smith v. Washington National Life Insurance Company, La.App., 178 So. 691, is the case upon which plaintiff most strongly relies as being "upon all fours" with the case before this Court. In that case, the first payment on the policy was expressly referred to as a "monthly" premium in the application, incorporated as a part of the policy by reference. It was held by the Louisiana court that if the policy dated April 11, 1936, insuring the insured from the date of the policy "until [the] first day of May, 1936," and for such further periods of one calendar month each as the premium paid would maintain the policy in force, were ambiguous, the policy would be construed (favorably to the insured) as meaning that for a payment of one monthly premium the insured was entitled to insurance from the effective date of the policy until May first, and such additional time which, when added to the elapsed time, would constitute a full month; while if the provisions were construed as not ambiguous, the insurer would be deemed to have waived the privilege of terminating the policy by accepting a full month's premium when issuing the policy.

The reasoning in the Louisiana case would be most persuasive in application to the case at bar if the policy here had designated the first premium of $87 as an "annual" premium, or by equivalent term. It does not do so. The Louisiana case leaves unanswered the question of whether the Long policy is reasonably susceptible of a construction having the effect of designating the payment in question as an "annual premium", or having the effect of raising an ambiguity in this respect.

The Colorado case most closely in point seems to be Shinall v. Prudential Ins. Co., 91 Colo. 194, 14 P.2d 183, in which coverage was sustained. There are features which distinguish this case from the case at bar, although common principles are involved, and the opinion itself precludes its application to cases where there was an unambiguous contract to pay a premium for less than a year's protection.

The authorities most strongly relied upon by defendant are the Missouri cases of Prange v. International Life Ins. Co., 329 Mo. 651, 46 S.W.2d 523, 80 A.L.R. 950; Petersen v. Metropolitan Life Ins. Co., Mo.App., 84 S.W.2d 157, and Broadway Laundry Co. v. New York Life Ins. Co., 351 Mo. 278, 172 S.W.2d 851. The Petersen case expresses the

doctrine of all of this line of cases as follows:

"It must be borne in mind that this policy was in no sense the more usual type of policy providing for continuing insurance upon the payment of annual, semi-annual or quarterly premiums on or before certain days occurring periodically after the date of the policy, but instead it provided for term insurance which would automatically expire at the end of the stated term, but which might be renewed for successive like terms upon the payment of the single premium fixed for each such successive renewal. In other words, plaintiff did not buy a straight policy which would warrant the construction that the time for the further payment of premiums thereon would be determined by the effective date of the policy, which in this case was April 15, 1932, the date of the delivery of the policy to him in person, but rather he contracted for term insurance, with the duration of the term definitely, clearly, and explicitly fixed by the provisions of the contract itself, and this irrespective of when the contract might become effective. * * *" [87 S.W. 2d 159.]

To the extent that dates were expressly fixed for the expiration of the first term in the respective policies, the facts in these Missouri cases, and in the case before this Court, are analogous. However, in none of the cases mentioned were the references to the premium for the first term connected in policy context with the "renewal annual premiums" thereafter to be paid as in the Long policy. In this latter respect, the Missouri cases are not determinative on the question of whether, at least by inference, the first premium, considering the policy as a whole, could be reasonably understood to be, though not expressed as, an "annual premium" or a payment in consideration of one year's insurance.

Nor do other Missouri cases cited in plaintiff's oral reply argument but not included in his brief, throw any light on this latter problem. Halsey v. American Central Life Insurance Company, 258 Mo. 659, 167 S.W. 951; Kennedy v. National Accident & Health Ins. Co., Mo. App., 76 S.W.2d 748. It is true that they involve a determination by the Missouri court, favorable to the insured, that the premiums should be considered as annual premiums or monthly premiums, as the case might be, in consideration of coverage for corresponding periods, but in each case there was at least some place in the policy expressly designating the premium in question as an "annual" or "monthly" premium, thus giving rise to the application of the doctrine of the Louisiana case.

We seem compelled, therefore, to return to the peculiar provisions of the Long policy itself to see whether they are susceptible of meaning which will either be equivalent to a designation of that first payment of $87 as an "annual premium" or will render the policy uncertain or ambiguous in this respect. As heretofore indicated, nowhere is this first payment designated or referred to as an "annual" payment or premium. The period which this first payment covers is expressly stated to expire as of June 1, 1951. There seems no ambiguity or uncertainty whatsoever in these respects.

The Court has been persistently aware of bothersome provisions in the policy lying outside of, or near, the perimeter of the issue involved in this case. The provision concerning the special ten year cash bonus provides that "for any term of ten consecutive years, from date of issue * * * that this policy is maintained in continuous force and no claim has been paid or loss incurred, the company will pay to the insured a cash bonus * * *." Since under defendant's construction of the policy the first premium did not cover a full year, this provision suggests that the policy would not be in force for a full ten consecutive years by virtue of the first ten premium payments under the policy. This policy also provides that "premiums after the 'first

year' shall be reduced by a guaranteed reduction of $20.00" * * * and that "this policy may be renewed for successive terms, as herein provided, by the payment in advance of the renewal *annual* premium of the amount of the first payment less any reduction and dividends * * *". These provisions, either taken alone or in connection with Section 4 under "General Provisions" raise the question, under defendant's construction of the policy, as to whether the reduction in renewal premiums would technically apply to the period June 1 to June 19, 1951, since until this date the policy would not have been in force for a full year. It is possible that these provisions render the policy ambiguous in some respects and this has occasioned some difficulty in arriving at a decision herein.

■ It has been concluded, however, that it is unnecessary to determine the latter point. The Court is convinced that an ambiguity such as to justify resolution in the assured's favor must relate to the point or issue involved in the specific case before the Court, and not to some other issue or state of facts which may possibly arise. The issue before this Court is whether the policy was in force beyond June 1, 1951, plus the fifteen days grace period, in consideration of the payment of the "first premium". As to this point there is no uncertainty or doubt permissible under the terms of the policy. There is nothing to indicate other than that both parties clearly understood what the policy expressly states, to wit: That the effective date is June 19, 1950, and that the first payment of $87 maintained "this policy in force for the term from the effective date hereof until the 1st day of June, 1951 * * *" and that "a grace period of fifteen days will be allowed for the payment of renewal premiums to the company, during which period the insurance shall continue in full force." The question of when the special ten-year bonus might become due and payable is not involved. Neither is the question of what amount would constitute the "re-

newal annual premium" or as to whether the reduction of $20 mentioned in the policy would apply to the period June 1, 1951, to June 19, 1951, before the policy had been in force for a full year, or as to when the renewal annual premium would have to be paid in view of the fact that the policy would not have been in force one full year until June 19, 1951. If these questions had arisen, it is possible that the policy would have to be interpreted, in view of possible ambiguities on these points, in favor of the assured, with the result that $67 tendered before June 15, 1951 would have kept the policy in force for another full year from that date. Be that as it may, to give effect to any ambiguity effecting these hypothetical problems would be to decide a case other than the one before this Court.

■ This circuit, in New York Life Ins. Co. v. Tolbert, 10 Cir., 55 F.2d 10, certiorari denied 285 U.S. 551, 52 S.Ct. 407, 76 L.Ed. 941, a case persuasive of the Court's conclusion, quoted Judge Sanborn in Standard Life & Accident Ins. Co. v. McNulty, 8 Cir., 157 F. 224, 226, in indicating that a rule of construction ought not to be permitted to have the effect of making a certain agreement ambiguous, and then to interpret it in favor of the insured. To make claimed ambiguities in other provisions of the policy, which might be involved in another case, grounds for declaring ambiguous the positive provision of the policy involved in this case, would be at least equally unjustifiable. There seems no reason inherent in the policy or suggested in the other evidence why the provisions involved in this action should not be given effect. It was competent for the parties to make stipulations with respect to the effective date of the policy, and the period which the initial premium payment covered. Shira v. New York Life Ins. Co., 10 Cir., 90 F.2d 953.

In view of the authorities and from a consideration of the provisions of the policy bearing on the question before the Court, the judgment must be in favor of the defendant.

It Is So Ordered, defendant to prepare and submit proposed findings of fact, conclusions and judgment in accordance herewith.