BLANCH C. WINTERS, ADMX., ETC., RESPONDENT, v. RESERVE LOAN LIFE INSURANCE COMPANY, APPELLANT.*

Kansas City Court of Appeals. April 5, 1926.

*Corpus Juris-Cyc References: Insurance, 32CJ, p. 1091, n. 22; p. 1164, n. 69; p. 1301, n. 99; Life Insurance, 37CJ, p. 514, n. 19.

520

*Rosenberger, McVey & Freet* for respondent.

*Frank G. West* and *Grant I. Rosenzweig* for appellant.

BLAND, J.—This is a suit on a life insurance policy in the sum of $5000, written by the defendant upon the life of one Charles Fuller Winters in favor of plaintiff as beneficiary. At the conclusion of the testimony the court instructed the jury to find for plaintiff, resulting in a verdict and judgment in her favor in the sum of $5439.17. Defendant has appealed.

The facts show that on the 27th day of February, 1904, the insured took out with defendant a policy of life insurance in the sum of $5000. In January, 1916, a loan of $970 was obtained by the insured on the security of that policy and later the premium due on February 27, 1916, was paid by the execution of notes, the last of which was for $125.60, due November 27, 1916. This loan was subsequently extended to January 27, 1917. Shortly before January 22, 1917, the insured made application to the defendant for a new policy, said application reading as follows:

Kansas City, Mo. Feb. 26, 1916, Reserve Loan Life Insurance Co., Indianapolis, Indiana.

"I herewith hand you policy No. 15391 on the 20 pay plan for $5000, and request that you substitute therefor a standard Provision non-participating policy for $5000 on the Lt'd. Pay Single Prem. plan, on which the premium hereafter will be $131.45 per annum; said substituted policy to be dated Feb. 26, 1916, at age 37, and to recite fully every benefit to be received in connection therewith and said original policy and all benefits thereunder to be cancelled as a consideration for such substitution Notes of $970 and $125.60 to be cancelled and returned."

This application was received by defendant on January 22, 1917. On said day defendant wrote the insured that it had received his application and that its local agent in Kansas City would deliver to the insured a new policy "issued in consideration of the cancellation and exchange of your old policy." "When your receipt for the new policy has been returned to us, we will immediately cancel the loan of $970 on your old policy and the cancelled loan agreement will be returned to you. We will also cancel and return your premium note for $125.60 which was given for the annual premium due February 27, 1916."

The new policy was delivered to insured on January 23, 1917, and the insured executed a receipt for the same on that day. In connection with the insurance of the new policy, the insured borrowed $1010 on a policy loan certificate. The new policy provided that it was issued in consideration of the payment in advance of a premium in the sum of $1194.25, to be continued upon payment of renewal premiums of $131.45 on the 26th day of February of each year thereafter until nine such renewal premiums had been paid or until the prior death of the insured. It also provided, "This policy shall not take effect unless the insured is alive and in good health at the time of its delivery nor then unless the first premium has been paid." The policy was dated February 26, 1916. It recited "a loan of $1010 made on this policy under date of February 26, 1916."

Under the heading of "Tables of Guaranteed Values" the policy provided—

| "Policy Year | Cash or Loan Value | Paid up Insurance | Insurance Years | Extended Months |
|---|---|---|---|---|
| 1 | $1010 | $2565 | 22 | 4 |
| 2 | 1150 | 2865 | 24 | 2" |

The policy further provided—

"The reserve on this policy and all surrender values contained therein are based on the American Experience Table of Mortality with three and one-half per cent. interest, and in no case does the surrender charge amount to more than two and one-half per cent. of the amount insured hereby.

"In the event of no indebtedness hereon, the values in the above Table will apply. Any indebtedness hereon may be paid in cash and the values in the Table will then apply, or if not so paid, the cash and loan values will be reduced by the amount of the indebtedness; the paid-up insurance will be reduced in the ratio of the indebtedness to the reserve on the policy; and the extended insurance shall be for as long a term as the balance left after deducting the indebtedness from the net value of the extended insurance as shown in the Table, will purchase as a net single premium. Premium payments for fractional parts of a year, if any, will proportionately increase the values in the Table. Values after twenty years shall be equivalent to the full reserve on this policy."

Under the heading of "Loan Value," it provided in part as follows:

"Failure to pay any loan or interest thereon shall not avoid this policy unless the total indebtedness to the Company shall equal or exceed the legal reserve on this policy nor until thirty-one days after legal notice shall have been mailed by the Company to the last known address of the insured, and assignee, if any, if such assignee has notified the Company of his address."

Under the heading of "Extended Insurance," it provided—

"At the expiration of one year from the date hereof, if any subsequent premium be not paid when due, the Company will, without action on the part of the insured, extend this policy as non-participating term insurance, without loan values, for the term provided in the Table Guaranteed Values opposite the number of years for which annual premiums have been paid."

And under the heading of "Premiums" it provided, among other things, that—

"Upon default in payment of any premium or any note or interest thereon, whether such note be given for the first or subsequent premium, this policy shall be null and void and all premiums forfeited to the Company, except as herein provided."

The policy further provided that, "This policy and the application herefor . . . shall constitute the entire contract between the parties hereto."

When the receipt for the new policy was returned to defendant it cancelled, as of date February 26, 1916, the loan of $970 that had been made by it. As the interest on this loan had been paid in advance, the insured was given credit for this interest, amounting to $53.35; this had left an indebtedness of $916.65 on account of this loan which was cancelled as aforesaid. The note for $125.60 which covered the premium and interest thereon upon the old policy from February 27, 1916, to February 27, 1917, was cancelled and the note returned to the insured. The old policy had a cash surrender value of $1031.35. This was used to cancel insured's indebtedness of $916.65 as aforesaid, and the balance of $114.70 was used in part settlement of the premium on the substituted policy.

On February 20, 1917, the insured wrote defendant that he regretted the "necessity of asking another extension" but that he "would like to have relief for approximately six months." In compliance with this request, the company upon the payment of the interest in advance sent insured a note for $131.45, the amount of the annual premium which fell due on February 26, 1917, payable upon the new policy. This note which was executed and returned by the insured, reads as follows:

"$131.45. Kansas City, Mo., February 26, 1917.

"On the 26th day of August, 1917 (before noon), for value received, I promise to pay to the order of the Reserve Loan Life Insurance Company, Indianapolis, Indiana, the sum of One Hundred Thirty-one and 45/100 Dollars, payable at 900 Odd Fellow Building, Indianapolis, Ind., with interest at the rate of eight per cent. per annum after maturity, and with attorneys fees. This note is given to secure extension of time of payment of the premium due February 26, 1917, on Policy No. 58540 in said Company bearing date February 26, 1916. If this note be not paid at maturity, said Policy shall,

without notice or any affirmative act on the part of the Company or any of its officers or agents, be null and void, except as provided in the policy; and this note and accrued interest shall, without rebate or discount and without reviving said policy or any of its provisions, be collectible without relief from valuation or appraisement laws, for the proportion of its face, with interest, that the time the insurance has been continued by this note bears to the whole time covered by said premium.''

This note matured on August 26, 1917, but was not paid. Upon the nonpayment of the note the policy was marked ''lapsed'' upon the records of the company. The records of the company show that the note was cancelled except as to the earned portion of $65.72. On August 28, 1917, the company wrote the insured of the nonpayment of the note, stating that this caused the policy to become delinquent and asked him to make application for reinstatement. No answer was made to this letter and on September 8th and 21st the company again wrote the insured to the same effect. Nothing was done by insured and he died on January 11, 1918. By virtue of the $1010 loan certificate and the earned portion of the $131.45 premium extension note, there was due the company on August 26, 1917, the sum of $1106.02, which included interest in the sum of $30.30 upon the $1010 loan.

The evidence further shows that at the time he made application for the substitution of the new policy insured was thirty-eight years of age and that the initial and subsequent premiums mentioned in the policy were based upon his age being thirty-seven years. At age thirty-eight the initial premium would have been $1218.50 and the subsequent premium $133.95.

Defendant insists that the court erred in directing a verdict for plaintiff. Plaintiff contends that the policy in suit is covered by the cases of Halsey v. Ins. Co., 258 Mo. 659; Johnson v. Ins. Co., 249 S. W. 115, and Landrigan v. Ins. Co., 245 S. W. 382, and like cases. These cases hold that where there is a difference as to the time stipulated that the premium is to be paid and the time when the insurance is to go into effect, the latter controls, for when the insured has paid a full year's premium he is entitled to a full year's insurance in return therefor; that under such circumstances to give such a stipulation controlling effect would result in the insured's obtaining less than a full year's insurance on the payment of a full year's premium, ending in insured's not obtaining full consideration for the premium paid.

Plaintiff insists that as the policy provides that it shall not take effect unless the insured is alive and in good health at the time of its delivery and then only in case the first premium has been paid, and as the policy was delivered and the first year's premium paid on January 23, 1917, and as the insured died on January 11, 1918, within

the policy year, the insurance was in force at the time of the death of the insured under the rule announced in the Halsey and other cases we have mentioned. In this connection plaintiff argues that by the express terms of the contract, it was entirely immaterial that a former policy existed and was exchanged for the policy sued on.

Defendant insists that the rule announced in these cases has no application for the reason that they involved original insurance policies and this case covers an entirely different situation, that is, the substitution of one policy for another, and that there was ample consideration for the antedating of the policy in suit. Plaintiff does not agree with this contention of the defendant but states that even assuming that there was an antedating agreement and that the fact that the substitution of policies is material, the dating of the substituted policy has no effect in determining the time when the insurance began, because the policy expressly provides that it takes effect from the time of its delivery and payment of the first premium (which occurred on January 22, 1917) and while the insured is in good health; that as the premium on the new policy had been paid by the loan agreement so as to carry the policy beyond the date of insured's death, the premium note of $131.45, on the failure to pay which defendant's plea of forfeiture is based, was without consideration and void.

We do not think that the rule laid down in the Halsey and other cases mentioned, has any application to the facts involved herein. There was ample consideration for the antedating of the policy. [Johnson v. Life Ins. Co., 143 Fed. 950.] Negotiations for the new policy were commenced by insured who for some reason desired to discontinue his old policy and to take out a new one. He was indebted to the insurance company and wanted this indebtedness cancelled and desired that the premium on his new policy be based on the age of thirty-seven years instead of his true age, which was thirty-eight, thus reducing the amount of the premium that was necessary to be paid. There is no evidence as to how the amount of the initial premium of $1194.25 on the substituted policy was arrived at or what it was made up of. Of course, it was quite immaterial as to how the amount was computed for the reason that the parties were at liberty to enter into any sort of a contract they desired without interference by the courts, except for fraud, mistake, or the like, or lack of consideration.

As before stated, insured desired his indebtedness of $970 and $125.60 cancelled by the company. He wanted a new policy on the Limited Pay Single Premium plan and desired to pay a premium therefor based upon his age as of February 26, 1916, instead of his real age at the time he made the application, which was thirty-eight. There is no question but that there was ample consideration for ante-

dating the policy, that is to say, the insured thereby procured the cancellation of $1095.60 indebtedness that he owed the company and secured an agreement that the company would carry the insurance upon the payment by him of a premium in a similar amount that he would have been required to pay had the policy been dated as of the date of its delivery. As before stated, we cannot inquire into the question as to whether plaintiff received enough for his agreement to the antedating of the policy, or, in other words, as to whether the insured exercised good judgment in entering into such an agreement. While perhaps not material, it is well to state that the insured obtained a full year's insurance beginning February .26, 1916, for the consideration mentioned in the policy as the old policy, supplemented by the new, was in force during that entire period and it was stipulated that the premium that he had paid on the old policy therefor should be returned to him, and this was done.

It is urged that the date of the policy has no legal importance although the application had requested that it be pre-dated, and that the policy be issued at the age of thirty-seven. Of course, in this connection, plaintiff is attempting to come within the Halsey and other cases which hold that the date of the delivery of the policy controls as to when the policy goes into effect. However, those were cases where original insurance was taken out and did not involve a substitution of policies. The provision in the policy involved in the case at bar concerning its taking effect upon delivery and payment of the premium while the insured was alive and in good health, was entirely consistent with the application for the policy, and what was intended to be done by the parties in the way of substitution of policies. There is no ambiguity. While the application was dated February 26, 1916, it was not signed by the insured and received by the company until January 22, 1917. The new policy could not have gone into effect prior to that time and as the company had not agreed in advance to issue the policy as requested in this application, it had a right to put into the policy any provision in reference to its going into effect that it desired so long as it was based upon a consideration and the insured was willing to agree to its terms, which he did by accepting the policy. Of course, the old policy remained in effect until the going into effect of the new policy. There is nothing inconsistent with the idea of a contract going into effect on a certain date and its covering a past situation or transaction as well as the future. We know of no law that would prevent the parties from agreeing that the contract entered into on January 22, 1917, should take effect as of February 26, 1916. To say that the predating of the policy has no legal significance is to wholly ignore the application signed by the insured and what he evidently intended should be the effect of it.

Plaintiff contends that at the time the policy was delivered had the insured suffered a failure of health or an accident from which he later died, the company would have been in a position to have successfully resisted any claim thereunder by asserting that the policy had never gone into effect and was void. If this be true, it might be that the terms of the policy were severe on the insured, but, as before stated, we have nothing to do with that. Of course, if the policy had not taken effect on account of these things, the company could not have collected the consideration therefor, or if collected, it would have been required to return it. Had the substituted policy never gone into effect, insured still would have enjoyed a full year's insurance, beginning February 26, 1916, under the old policy. To say that there was no provision of the contract which was affected by the antedating of the policy, would wholly ignore the whole scheme of the substitution of the policies. We, therefore, hold that there was ample consideration for the antedating of the policy and for the giving of the premium note in the sum of $131.45.

Plaintiff contends that even though it be held that the rule in the Halsey and other cases cited does not apply and that the insured owed a premium of $131.45 for the policy year beginning February 26, 1916, and that the premium note was a valid one, still the default in the payment of this note on August 26, 1917, did not render the policy void but brought into play the policy provisions for automatic extension of the insurance which, it is claimed, prolonged the insurance beyond insured's death. The parties do not agree on the method by which the extended insurance is to be calculated under the provisions of the policy; plaintiff contending that under the terms of the policy its cash or loan value as shown by the Table of Guaranteed Values is the net value of the extended insurance to be used to purchase the net single premium mentioned in the policy, while defendant insists the use of the words "as shown in the table" in that part of the policy providing that "the extended insurance shall be for as long a term as the balance left after deducting the indebtedness from the net value of the extended insurance *as shown in the table* will purchase as a net single premium," refers to the number of years and months shown in the table and not to the column containing the cash or loan values; that the net value of the extended insurance is its money value to be calculated according to other provisions of the policy, that is to say, it is to be computed upon the reserve based upon the American Experience Table of Mortality with three and one-half per cent. interest. Defendant's actuary testified that calculating the net value of the extended insurance on defendant's theory, such value at the time of the default in the payment of the note was less than the amount of indebtedness on the policy evidenced by the loan certificate alone, even assuming that the premium note of $131.45

was to be considered as a payment of six months of the 1917 premium on the policy. The actuary, making the same assumption, also calculated the net value of the extended insurance on the basis of our nonforfeiture statute (section 6151, R. S. 1919) and this calculation likewise showed that the insured had no equity in the policy at the time the premium note became due, on account of the insured's indebtedness, exclusive of that covered by the premium note.

However, adopting plaintiff's theory as to the manner in which the net value of the extended insurance is to be arrived at, it becomes material to decide whether the policy ever had a cash or loan value of as much as $1150, the amount mentioned in the table for the second policy year. If it had, there is no question but that under all the testimony there was enough equity left in the policy after paying all of the indebtedness that the insured owed the company to purchase a net single premium to carry the policy beyond the death of deceased. It was substantially conceded by the defendant at the trial that the earned portion of the note paid one-half year's premium, and if this is true, under all the testimony, the cash or loan value of the policy on August 26, 1917, was $1080. However, plaintiff contends that it was $1150. This contention is based upon the claim that the premium note paid the premium for a full year. We think, however, that plaintiff is mistaken in this contention. The note recited that "this note is given to secure extension of time for the payment of the premium due February 26, 1917."

" 'The law in this State is settled that the acceptance of a note either of the debtor or of a third person for a pre-existing debt is no payment, unless the creditor expressly agrees to take it as payment and to run the risk of its being paid.' [Shotwell v. Munroe, 42 Mo. App. 669; State ex rel. v. Wagers, 47 Mo. App. 431; McMurray v. Taylor, 30 Mo. 263, 77 Am. Dec. 611.]" [Wooldridge v. Hopkins, 278 S. W. 1091, 1084.]

This rule applies to notes given to life insurance companies for premiums. [Keller v. N. A. Life Ins. Co. (Ill.), 133 N. E. 726, 729.] There is nothing in the case of Malone v. Ins. Co., 202 Mo. App. 499, cited by plaintiff, holding to the contrary. It is unnecessary for us to say as to whether by reason of the other provisions of the premium note and under the wording of the policy, the premium note paid the premium to the date of the default in the payment of the note, for the reason that defendant has conceded as much and we may assume that it did pay to that extent in view of the conclusion that we have reached in the case.

However, we feel confident that the note did not serve to pay the premium beyond the time of the default in the payment of the note. The note provided that it should be collectible only "for the proportion of its face, with interest, that the time the insurance has

been continued by this note bears to the whole time covered by said premium.'' Under the provisions of the note and the policy, the policy ceased to run upon premiums paid at the time the default was made, but ran merely upon extended insurance. And this was the testimony of plaintiff's actuary. We, therefore, must hold that, at most, the net value of the extended insurance was not greater at the time in question than $1080.

The only question that remains to be decided is as to whether the $65.72, the indebtedness owed the company by the insured by virtue of the existence of the premium note, at the time the note became due, is to be considered in determining the net value of the extended insurance or merely taken as an indebtedness of the insured to the company to be deducted, with interest, from the amount of the insurance. Plaintiff urges that the premium note was not made a lien upon the policy under the terms of the contract and was not deductible from the net value of the extended insurance. If plaintiff's contention is well taken, then there was sufficient left in the net value of the extended insurance to purchase a net premium extending the insurance beyond the date of insured's death. If her contention is not correct and the $65.72 is to be deducted in calculating the net value of the extended insurance, then there was not sufficient equity in the policy to carry it beyond said date.

Plaintiff contends that the premium note was merely a naked note of hand, given on the personal credit of insured; that the transaction, in the consideration of this point, should be treated as though the insured had paid the premium in cash and the extended insurance is to be computed exactly as if all premium due had been paid in cash to August 26, 1917. In this connection plaintiff points out the peculiar language used in the loan certificate whereby the insured borrowed of the defendant the sum of $1010 to cover in part the first premium. The language of this instrument is: That the insured had ''this day borrowed of the said company on the said policy (which is hereby assigned to said company) the sum of $1010, etc.'' Plaintiff says that in this loan certificate the loan of $1010 was made a lien upon the policy while under the terms of the premium note the note was not.

While the premium note was not made specifically a lien upon the policy, we think there is no question but that the policy contemplated that it should be taken into consideration in computing the net value of the extended insurance. The policy provides that if any indebtedness ''hereon'' is not paid ''the extended insurance shall be for as long a term as the balance left after deducting the indebtedness from the net value of the extended insurance as shown in the table, will purchase as a net single premium.'' The policy further provides that ''upon the default in payment of any premium or any note or in-

terest thereon, whether such note be given for the first or subsequent premium, this policy shall be null and void and the premiums forfeited to the company, except as herein provided.'' The note contains a similar provision. Plaintiff says that the exception refers to that part of the policy mentioning the indebtedness ''hereon,'' and that the word ''hereon'' as used in the policy means such loans as are specifically made a lien upon the policy such as the loan for the first premium. We think that this wholly ignores the provision of the policy that it was to become null and void in case of default in the payment of any note given for a premium, with the exception therein contained. Under plaintiff's theory the insured could have given an unlimited number of notes of this character and the policy could never become null and void for their nonpayment, but the indebtedness thereby created would be merely deducted from the amount of the policy after insured's death. ''Hereon'' is defined in Webster's Dictionary as ''on this;'' ''hereupon.'' ''Hereupon'' is defined in the Century Dictionary as, ''upon this,'' ''following or on account of this.'' Construing all of the terms of the policy, we are confident that the word ''hereon'' means any indebtedness created on account of the policy, and certainly the giving of the premium note was the creation of an indebtedness on account of this policy. [De-Werthern v. Life Ins. Co., 234 S. W. 1048, 1049.] The construction that we have given the policy is fair to both parties. If the giving of the note was to operate so as to increase the net value of the extended insurance, it also should operate to reduce such value in case of its nonpayment.

While there is a difference in the wording of the loan certificate and the premium note, we do not consider this difference as of much importance. The loan certificate was given under different circumstances than those present in the giving of the premium note. Merely because the company used a different character of evidence of indebtedness given at different times for different purposes, does not mean that one should be construed in reference to the other. It is possible that the company at the time the premium note was given, was not using the same kind of loan certificate. We are not called upon to speculate upon the reasons why the company saw fit to draw the two documents with their provisions as they are. Each, we think, must stand on its own bottom.

After a careful examination of the whole matter, we are confident that we would be wholly unjustified in holding that the earned part of the premium note should not be deducted in calculating the net value of the extended insurance. Being of this opinion, it follows that plaintiff failed to make out a case and instead of a verdict being directed for plaintiff it should have been directed for the defendant.

The judgment is reversed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.