HUGH M. MAGERS, ASSIGNEE OF STANTON MORRO, v. KANSAS CITY LIFE INSURANCE COMPANY.—191 S. W. (2d) 320.

Kansas City Court of Appeals. November 5, 1945.

458

*Ray B. Lucas* and *Jos. R. Stewart* for appellant.

*R. C. Southall* for respondent.

DEW, J.—This is an action by the plaintiff, assignee of Stanton Morro, to recover on a life insurance policy No. 940036, issued by the defendant to the insured, Mary E. Morro. The court, sitting as a jury, gave judgment for plaintiff in the amount of $1635, which included the face amount of the policy, interest from January 23, 1944, statutory penalty, and attorney's fees. After denial of its motion for new trial, defendant appealed.

Plaintiff, by his amended petition, seeks to recover under the policy on the theory that although it bears the date of September 6, 1942, nevertheless, it was delivered and the first premium paid thereon October 24, 1942; that the policy took effect on the latter date, thereby making the quarterly payments begin on that date, becoming due on the 24th of every third month thereafter; 'that she paid the succeeding quarterly payments when due, and that on January 21, 1944, the insured duly tendered the quarterly premium due January 24, 1944, which was refused by the defendant, and that upon the death of the insured January 23, 1944, the policy was in full force and effect. He alleged that the defendant was duly notified and proofs of loss were submitted, and that defendant denied liability. He alleged the assignment to the plaintiff, and vexatious delay. The prayer was for the face of the policy ($1000), plus 10 per cent penalty, interest, and attorney's fees of $500.

By its answer defendant, in substance, denied liability on the policy; alleged that the insured requested, and by her conduct and course of dealing treated and construed the effective date of said policy to be September 6, 1942, and by her acts and communications, during the life of said policy, agreed and construed the due date of each quarterly premium of $8.17 to be the 6th day of December, March, June and September each year, and that the due dates of quarterly premiums of said amounts following September 6, 1942 were

December 6, 1942, March 6, 1943, June 6, 1943, September 6, 1943, and December 6, 1943; alleged that accordingly said policy was issued on a quarterly basis and that the due date of said quarterly premiums of said amount was the 6th day of each December, March. June and September until the 20th anniversary of said policy or until the prior death of the insured; that insured paid five quarterly premiums of said amount on said policy, which were sufficient to carry said policy in effect until December 6, 1943, but failed to pay the said quarterly premium due December 6, 1943, or within the grace period therefor, and thereupon said policy lapsed and became void; that there was no value in said policy available to continue the same thereafter as extended insurance; that therefore on the alleged date of the insured's death said policy had lapsed and was void, and the defendant was not indebted to plaintiff in any amount. The answer pleaded some of the provisions of the policy which will hereinafter be set forth.

Plaintiff, by reply, admitted the provisions of the policy as set out by defendant, and reiterated that the policy did not take effect until the date of delivery October 28, 1942, whereby the 28th days of October, January, April and July were the due dates for the quarterly premiums. Plaintiff denied that the insured requested, or by her conduct treated and construed the effective date of the policy to be the 6th of the months of December, March, June and September, or that she recognized and agreed during her lifetime that such were the due dates of the quarterly premiums thereon in each year, and denied that the insured could under the provisions of the policy make such an agreement; denied that she failed to pay any quarterly premium when due, and deneid that the policy was void at the time of her death.

The evidence of the plaintiff tended to prove the assignment to the plaintiff of all the right, title and interest of Stanton Morro, surviving husband of Mary E. Morro, deceased insured, in the policy in question; that Stanton Morro and the insured were husband and wife September 6, 1942, and were residing at that time in Kansas City, Missouri; that on or about that date Mary E. Morro applied for the policy referred to; that the application was signed by the insured in the presence of her husband; that the date of the signature was some time the first part of September; that the policy was delivered six or seven weeks thereafter, the latter part of October, 1942; that the first premium of $8.17 was paid on the date of the delivery of the policy; that insured and her husband moved thereafter to the state of Washington, from which place the insured mailed checks to the defendant for premiums, and that on January 22, 1944, she caused to be mailed to the defendant her check for $8.17, dated January 21, 1944, and that insured died January 23, 1944; that after her death the last mentioned check was returned and delivered to the husband

of the insured, together with letter of January 28, 1944, written by the defendant to the insured, referring to the letter of the date of January 24, 1944, in which the defendant had acknowledged the receipt of check for $8.17, but stating in the letter of January 28, 1944, that defendant had received information leading it to believe the insured was unable to furnish satisfactory evidence of insurability, and for that reason was returning the check therewith, and stating that the policy lapsed for nonpayment of premium due December 6, 1943 "as your remittance bears postmark of January 22, 1944, and the grace period allowed for payment of this premium expired January 6, 1944"; that on February 3, 1944, Stanton Morro assigned his interest in the policy to the plaintiff by written assignment. The evidence tended further to show that at the date of the application and at the date of the delivery of the policy, the insured was in good health and remained so until her accidental death on January 23, 1944.

In connection with the cross-examination of plaintiff's witness Stanton Morro, there was introduced a letter from the counsel for defendant to counsel for plaintiff to the effect that the quarterly payments that were paid on the policy had been paid to the down town office of the defendant as follows: October 24, 1942, $8.17; January 5, 1943, $8.17; March 23, 1943, $8.17; July 8, 1943, $8.17, September 22, 1943, $8.17.

On further cross-examination of plaintiff's witness Stanton Morro, the following letter was introduced and identified as in the handwriting of deceased insured, mailed from Hanford, Washington, January 22, 1944, to the defendant, and enclosed in an envelope postmarked January 22, 1944, addressed to the Kansas City Life Insurance Company, 914 Baltimore, Kansas City, Missouri, c/o E. K. Barton, cashier, with return notation "Mrs. Stanton Morro, Barr 40A Room No. 2, Hanford, Washington, the letter reading as follows:

"overlooked paying premium on this policy—Will you find out if they will accept this payment. if not would you let me know so I might be re-instated.

> "Mrs. Stanton Morro
> "Barr 40A, Room No. 2
> "Hanford, Washington"

Further in connection with the cross-examination of Stanton Morro, copy of a letter was identified, hearing date January 8, 1944, addressed to the insured at Kansas City, Missouri, advising the insured that the records of the defendant showed that the days of grace for the deposit of the current premium had expired without payment of $8.17 due December 6, 1943, and asking if there had been an error or oversight, and requesting a reply. The letter further stated:

"If you have not remitted, won't you fill out, sign and have witness sign enclosed application for reinstatement? Then send it to us with check or money order. Save money by making the annual

deposit, if convenient; but deposit semi-annual or quarterly premium, if you prefer.

"Prompt action now may prevent unfortunate and perhaps needless loss".

This letter was handed to Mr. Morro by his mother-in-law, who lived near their Kansas City residence, when he returned after the death of the insured. Defendant further introduced in connection with plaintiff's case a letter from the defendant dated January 27, 1944, addressed to the insured at Hanford, Washington, as follows:

"We acknowledge your remittance of $8.17 intended as payment of premium due December 6. Some time ago we mailed you an application for reinstatement at your Kansas City address. However we enclose herewith another blank which please complete by answering all of the questions, sign, have your signature witnessed and return in the enclosed addressed envelope promptly. We will then present the same to the Reinstatement Department for approval.

"Thanking you for your letter and check and trusting you will return the blank properly completed at once, I am", etc.

The policy in question agreed to pay $1000 to Stanton Morro, husband of the insured, Mary E. Morro, upon her death, during the continuance of the policy. By its terms it is exchangeable for a paid-up life participating policy upon the full payment of premiums as divided, at the expiration of twenty years from date thereof. Among the general provisions of the policy is the following:

"1st. WHEN EFFECTIVE. Unless the first premium has already been paid in cash, this Policy shall not take effect until the first premium hereon has been paid and this Policy delivered to the Applicant within thirty days from the date hereof, and unless the Applicant is in good health at the time of its delivery."

"3rd. MODES OF PREMIUM PAYMENT—EFFECT OF NON-PAYMENT. Premiums on this Policy may be paid annually, semi-annually or quarterly as shown on the back cover page hereof, or they may be paid monthly if the monthly premium is stated on the back cover page hereof. The payment of any premium hereon shall not maintain this Policy in force beyond the date when the next premium becomes due. Upon failure to pay any premium on or before the date when due, or within the grace period provided herein, or upon failure to pay any note given for a premium, or part thereof, when due, or upon failure to pay any premium, or part thereof, on the date to which payment may have been extended by voluntary agreement of the Company in writing executed at its Home Office by the President, Vice President, Secretary or Assistant Secretary, this Policy and each and every right and benefit hereunder shall immediately terminate, except the provisions hereof for reinstatement and for extended insurance and for surrender for paid-up insurance and for

cash as fixed in the provisions for and Table of Nonforfeiture and Loan Values on the preceding page," etc.

"4th. REINSTATEMENT. If this Policy shall terminate for failure to pay a premium hereon as above provided, and has not been surrendered, the Company will reinstate it at any time, upon written application by the Insured to the Company at its Home Office, accompanied by the evidence of insurability satisfactory to the Company, and the payment or reinstatement of any indebtedness existing at the date of default and accrued interest thereon, and the payment of all unpaid premiums, together with interest thereon at the rate of six per cent per annum, compounded annually."

"9th. ENTIRE CONTRACT. This Policy and the application herefor, copy of which application is attached hereto and made a part hereof, constitute the entire contract between the parties hereto . . ."

"11th. AUTHORITY TO CHANGE OR MODIFY. No agent has authority to change or modify any of the terms or provisions of this Policy, to extend the time of payment of premiums, to waive any forfeiture, to bind the Company by making any promise or any representation, or to deliver any policy contrary to the provisions contained in this Policy or in the application herefor. This authority can be exercised only by the President, Vice President, Secretary or Assistant Secretary of the Company in writing at its Home Office, and will not be delegated."

The last page of the policy contains the following:

"THIS POLICY IS ISSUED IN CONSIDERATON of the stipulations, agreements and representations made in the application for this Policy, a copy of which application is attached hereto and made a part hereof, and said Policy and application constitute the entire contract between the parties hereto, and in further consideration of the payment of the first premium of EIGHT Dollars and SEVENTEEN Cents, which is the premium for Term Insurance hereunder ending at noon on the SIXTH day of DECEMBER 1942. This Policy will be continued upon the further payment of a premium of like amount on or before the SIXTH day of each DECEMBER, MARCH, JUNE, AND SEPTEMBER hereafter until the twentieth anniversary of this Policy or until the prior death of the Insured, any such premium payable before the first anniversary of this Policy being the premium for Term Insurance hereunder ending at noon on the due date of the next succeeding premium payment.

In Witness Whereof, the KANSAS CITY LIFE INSURANCE COMPANY has caused to be affixed the signatures of its President and Secretary, at Kansas City, Missouri, this SIXTH day of SEPTEMBER A. D., 1942."

The application is attached to the policy and shows, among other things, date of birth as March 6, 1911, the age at nearest birthday 31,

the amount of annual premium $30.82, the selection of quarterly payments as the Mode of Payment, in the amount of $8.17 per quarter. It is signed by Mary E. Morro. On the date line the figure "6" is heavily written over the lighter figure "19", and the word "September" appears in the blank for the month in which there is a slight smear distinguishable in the letters "s" and "e". The "42" in the year blank shows no evidence of any change. In the supplemental statement forming a part of the application containing questions and answers, the figure "6" in the date blank discloses no evident appearance of change but the "September" in the month blank appears somewhat smeared, and the "42" in the year blank shows no evidence of change.

There was no contention that there was any reserve or accumulated value of the policy to pay the disputed premium in question.

Counsel for plaintiff, testifying to the value of his services in the prosecution of this action, placed the same at $500 on a contingent basis on which he had been employed. Thereupon the plaintiff rested his case.

In behalf of the defendant the Assistant Secretary of the defendant company testified that he had charge of the records and files of the policies issued and was familiar with the policy in suit. He stated that the policy was issued on the basis of age thirty-one; that it bore the date of September 6, 1942; that the premiums required for such policy are $8.17, if paid quarterly, $16.03, if paid semiannually, or $30.82, if paid annually; that payment of such premiums for twenty years would fully pay it up. The witness produced premium record card of the company as part of the original records, which described the policy by number, the name of insured, annual, semiannual and quarterly premiums, as above stated, and the age as thirty-one, date of birth 3-6-'11, and showed the following entries:

| | Premium Paid | | | | Paid To | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Month | Day | Year | Amount | Month | Day | Year |
| F | Oct | 24 | '42 | 8.17 | 12 | 6 | 42 |
| F | Jan | 5 | '43 | 8.17 | 3 | 6 | 43 |
| F | Mar | 23 | '43 | 8.17 | 6 | 6. | 43 |
| F | Jul | 8 | '43 | 8.17 | 9 | 6 | 43 |
| D | Sep | 22 | '43 | 8.17 | 12 | 6 | 43 |

Witness testified that the card correctly showed the premium payments made on the policy, and that the last payment paid the policy to December 6, 1943, and that the premium due on that date was not paid when due, nor within the grace period thereafter; that the application was received by the company October 20, and approved October 23, 1942; that the policy issued thereon was exactly as applied for in the application; that the policy was delivered October 24, 1942, and the first premium of $8.17 was paid on that date;

that the method of determining the age of an applicant for life insurance is to take as the age the nearest birthday; that if the applicant were thirty-one years of age on one birthday, he would be so considered for insurance purposes through a date six months after that birthday, and after six months, the age would be considered as thirty-two; that if the birth is March 6, 1911, the applicant would continue to be insured at the age of thirty-one until September 6, 1942, inclusive, and on any date thereafter until her next birthday, would be considered thirty-two years of age. He testified that at the age thirty-one, for a policy of the kind in question, the rate would be $30.82 annually, $16.03 semiannually, and $8.17, quarterly. He stated that the age of insured on October 24, 1942, would have been thirty-two years, for which the premium rate would be $31.82, as issued with the policy dated October 24, 1942; $16.34, semiannually, and $8.33 quarterly, or sixteen cents more on a quarter than the policy as it was issued; that the policy in question was dated September 6th, because the application was so dated, and that that date was necessary to give the applicant the benefit of the rate at age thirty-one; that the application was dated back, as was the policy, for that purpose; that by so dating the policy and application, the applicant not only got the benefit of a lesser quarterly premium, but her privileges of cash surrender and nonforfeiture values would be earlier accrued under the policy dated September 6th than under one dated in October; and the privilege of paid-up life insurance would accrue sooner; that the savings in premiums over the twenty wear period would be $12.80. He testified tht the cost of insurance between September 6, 1942, and October 24, 1942, would be $4.80; that if the policy had been figured on the basis of age thirty-two, the premiums charged therein would not have been sufficient for a $1000 policy on the plan of the one issued; that in fact the company would not issue a policy for less than $1000. He testified that he saw the insured's letter with reference to her desire for reinstatement in January, 1944, but received no communication from her complaining or objecting to the policy in any way; that the company letter of January 28th was written at his direction, returning the check tendered after the death and after the lapse of the policy.

On cross-examination the witness stated that the policy did not go into effect until October 24, 1942, when the application and the policy were approved, but that did not mean that the first annual premium date would be October 24, 1943, because the policy provided otherwise, and provided that the first premium paid to only December, 1942, in accordance with the application; that the first premium was tendered as of the date of the application, September 6, 1942; that the claim of the company was that the first premium paid for insurance up to December 6th from whatever date the policy took effect; that the company had not made any change in the rates pending the applica-

tion, but the fact that the applicant was thirty-two years of age at the next birthday would have required a higher rate if it had been dated October 24, 1942; that while an applicant is not protected under a policy dated back, until the policy is delivered and the first premium paid, the first premium is not for a year's insurance, but for the privilege of having a lower insurance age; that if the application had in fact been made on September 6th, then the first premium of $8.17 would have paid her insurance for a quarter of a year, to-wit, to December 6th.

Dan Jackson, witness for the defendant, stated that he was the agent who sold the policy in question. He stated that he obtained the information in the application from Mrs. Morro and wrote it as he received it from her, and in the presence of her husband; that the date of birth, March 6, 1911, was the date stated to him by Mrs. Morro; that in the date of the application he believed an ink eradicator had been used to erase the month, and that he had changed the day from the 19th to the 6th, writing the "6" over the "19"; that the date originally read October the 19th, 1942; that the change was made from Ocober to September. He further stated, over plaintiff's objection, that he had had a conversation with Mr. and Mrs. Morro at the time the application was signed relative to the age at which the policy was to be issued and "We said we would issue it at thirty-one in order to save a few cents on the premium"; that his commission would be greater at a higher premium rate than on a lower premium rate; that when the application was written, the age change of the insured was so close that "I explained to them that we would make it thirty-one, and that the contract would be dated back to September 6, 1942; in that way she would have the benefit of the reduction in premium; she consented to that in the presence of her husband"; that he made delivery of the policy to both Mr. and Mrs. Morro, at which time they went over the policy; that he could not recall whether the age thirty-one was again discussed because it had already been discussed, and that insured and her husband understood that the second premium would be due a little while before the first three months elapsed. He testified that Mrs. Morro never expressed any dissatisfaction with the policy as issued, nor did her husband complain that it was not what they applied for and wanted, but seemed well pleased with it. He testified that the application was actually made on the 19th of October, 1942, and that he took it over to his office the next day, the 20th, and the correction was made to September 6, 1942, to permit the dating back of the policy in accordance with the application; that Mr. Morro's statement that the application was signed early in September was incorrect.

At the request of the plaintiff, the court, sitting as a jury, made the following findings of fact:

"I"

"That the insured, Mary E. Morro, applied for the policy of insurance in suit on September 6th, 1942, and that by the terms of the policy and application the defendant assumed no liability whatsoever until a policy of insurance was actually delivered and the first premium paid.

"II"

"That the policy was delivered and the first premium paid on October 24, 1942, and that the policy became effective as of that date.

"III"

"That subsequent quarterly premiums became due on January 24th, 1943; April 24th, 1943; July 24th, 1943, October 24th, 1943 and January 24th, 1944.

"IV"

"That subsequent quarterly premiums were paid or tendered to the defendant within the time provided by the policy and the law applicable thereto and that the policy was in force on January 23rd, 1944.

"V"

"That the insured died on January 23rd, 1944 and that thereafter the beneficiary Stanton E. Morro, duly notified the defendant and offered to furnish proofs of loss and that the defendant denied liability and refused to accept proofs of loss on January 30th, 1944.

"VI"

"That the beneficiary, Stanton Morro, before the institution of this suit, duly assigned all of his right, title and interest, in and to the policy in suit to the plaintiff herein, for the purpose of instituting and prosecuting this suit.

"VII"

"That the refusal of the defendant to pay the indemnity promised by the policy in suit was vexatious and without reasonable cause.

"VIII"

"That considering the amount involved, the work done and the time consumed, a reasonable attorney's fee to plaintiff's attorney is $500.00".

At the further request of the plaintiff, the court gave the following declarations of law:

"I"

"That the policy in suit became effective on October 24th, 1942 and that the premiums paying dates for the subsequent premiums were January 24th, 1943; April 24th, 1943; July 24th, 1943; October 24th, 1943 and January 24th, 1944.

468

"II"

"That the policy in suit was in force at the time of the death of the insured, which the court finds occurred on January 23rd, 1944.

"III"

"That Stanton Morro, the beneficiary named in the policy having duly notified defendant of the death of the insured, and offered to furnish proof of loss, defendant became indebted to him in the sum of $1,000.00 on January 30th, 1944.

"IV"

"That before the filing of this suit the said Stanton Morro assigned his right, title and interest in and to the policy in suit to plaintiff herein, and as his assignee plaintiff is entitled to recover in the place of the said beneficiary.

"V"

"That the defendant refused to pay the $1,000.00 due the said Stanton Morro and that said refusal to pay was vexatious and without reasonable cause and by reason of its vexatious refusal to pay said insurance plaintiff, as assignee of the beneficiary is entitled to recover penalties of not more than 10% of said principal amount and a reasonable sum for attorney's fees.

"VI"

"That plaintiff is entitled to recover interest at 6% per annum from January 30th, 1944 until this time."

The court refused the declaration of law offered by the defendant in the nature of a demurrer at the close of all the evidence.

The court also refused findings of fact requested by defendant, in substance as pleaded in defendant's answer.

Appellant's first assignment of error is the refusal of the court to give the defendant's declaration of law in the nature of a demurrer offered at the close of all the evidence in the case for the reason that the written or documentary evidence and all the facts and circumstances in the case show that insured's policy lapsed without value for failure to pay the quarterly premium of $8.17 due December 6, 1943, that insured was not thereafter reinstated, and the policy was therefore not in force on January 23, 1944, the date of insured's death.

Appellant's remaining assignment of error objecting to the allowance of penalty and attorney's fees on the ground of vexatious delay is disposed of by our ruling hereinafter on appellant's first assignment.

Plaintiff claims under the authority of the ruling in Halsey v. American Central Life Ins. Co., 258 Mo. 659, 167 S. W. 951, and many cases under that decision. The Halsey case and cases under that authority hold, generally, that:

". . . . where the policy (or the application, a part of the policy) contains the usual 'effective on delivery and payment' clause,

and the date of the policy and due date of premiums as written in the policy is another and different date, said date of *delivery* of the policy marks the beginning of the effectiveness of the policy and where the premium is paid for the annual period, the policy runs for one year from said date''. [McQueeny v. National Fidelity Life Ins. Co., 350 Mo. 469, 166 S. W. (2d) 461, 470.]

The courts have declined to apply the rule of the Halsey case, however, in cases where the insurer and insured have agreed, by the application and the policy issued, on a specified date for the beginning of the term of coverage or due dates for subsequent premiums.

The first and most frequently cited case of the second group of decisions is that of Prange v. International Life Ins. Co., 329 Mo. 651, 46 S. W. (2d) 523. Among other cases following the Prange case are Winters v. Reserve Loan Life Ins. Co., 221 Mo. App. 519, 290 S. W. 109; Lacy v. American Central Life Ins. Co., 232 Mo. App. 1132, 115 S. W. (2d) 193; Tabler v. General American Life Ins. Co., 342 Mo. 726, 117 S. W. (2d) 278; Vail v. Midland Life Ins. Co., 108 S. W. (2d) 147; Neuner v. Gove, 133 S. W. 689.

In the Prange case, *supra,* the application stated that the insured was born October 5, 1883, "making my age, nearest birthday, 38 years". The insurer pointed out to the applicant that his nearest birthday was October 5, 1922, at which time he would be thirty-nine year of age, but that by predating the policy or having it take effect prior to April 5, 1922, he would have the benefit of the rate at the age of 38, and save $21 per year premium on each of the four policies. Thereafter, on May 18, 1922, the insured received the four policies, all dated May 16, 1922. He was thereupon furnished with a supplemental application to be executed before delivery of the policies, which application was dated May 18, 1922, and stated therein "I desire my policies to be dated April 4, 1922". The supplemental application was so made and the policies delivered. At that time the insured desired an additional policy, which was furnished him, dated May 18, 1922, together with a formal application therefor, which was executed on May 24, 1922, and, upon the signing of which, the fifth policy was delivered. In the latter application it was expressly agreed "that the additional insurance applied for shall take effect as of the 4th day of April, 1922". Each policy contained, among other clauses, the following, being different only in the amounts of premiums and dates:

"This contract is made in consideration of the application herefor, which application is made a part hereof, and the payment of Seven Hundered and 75/100 Dollars, constituting payment of premium for term insurance ceasing at noon on the fourth day of April, 1923, from which date it may be renewed as an Ordinary Life policy by the

payment of like sum on said date and on each succeeding anniversary date of the policy during the lifetime of the Insured. . . .

"After delivery of this policy to the Insured it takes effect as of the fourth day of April, 1922".

The insured in the Prange case found himself unable to pay the premiums coming due April 4, 1923, and the insurer offered to accept part cash and his notes for the balance, maturing July 4, 1923. This offer the insured did not accept on or before April 4, 1923, nor within the period of grace thereafter, nor, in fact, did he ever accept it, but died September 26, 1923, without having made any payments other than the ones made at the time of the delivery of the policies. In the meantime, on May 16, 1923, insurer gave him notice that his policies had lapsed because of his failure to make the payments prior to May 4th (end of grace period), and advised him relative to reinstatement.

The plaintiffs in that case contended that the contracts of insurance should be deemed to have been made on May 18th as to three policies, and on May 24th as to the other; that the first payments insured Prange until May 18th and May 24th, 1923, respectively; that he had thirty days' period of grace after said dates, respectively, to make the next premium payments, and that defendant having, prior to the lapse of such periods, wrongfully notified him of forfeiture, the insured was not bound thereafter to tender further payments, that the policies were, therefore, still in effect at his death, September 26, 1923.

The court in the Prange case took judicial notice of the statutory computation of reckoning age for insurance from the nearest birthday, and of the law of Arkansas, wherein the policies were made, to the effect that predating policies was lawful. The court said that the precise question determinative of the case was: "When did the second premium payment become due?" On this point the court said, l. c. 525:

"We will go to the policy declared upon in the first count. . . . It provides: 'This contract is made in consideration of . . . the payment of Seven Hundred and 75/100 Dollars, constituting a payment of premium *for term insurance ceasing at noon on the 4th day of April, 1923,* from which date it may be renewed as an Ordinary Life policy by the payment of like sum on said date'. This language is clear and explicit, there can be no doubt as to its meaning; *the consideration given for the first payment was term insurance, which ceased on the 4th day of April, 1923;* by the payment of a like sum on that date the contract of insurance would be renewed as an ordinary life policy". (Italics supplied.)

It is true that the Prange case the applications and the policies both fixed the exact day, month and year when each policy should take effect, the 4th day of April, 1923. This was done, as the court pointed

out, probably for the purpose of giving the insured the benefit of the rate at thirty-nine years of age. But the court did not rely on the fixing of the effective date of the policy by those direct provisions of the policy and application, but said, l. c. 526:

"But whether or not that was the purpose of setting back the effective date of the policy it cannot be said that the statements and stipulations just referred to—regardless of their several datings—in any way affect, modify, or cast doubt upon the plain provision that *the term insurance purchased by the first payment would expire on April 4, 1923,* and that the contract could be renewed by the payment on that date of a stipulated second premium". (Italics supplied.)

It was contended in that case as in the case at bar that the insured paid for part of a period of insurance which he did not get. The court in that regard said:

"The contention ignores the plain language of the contract. In its inception the contract was not one for life, but an assurance *for a term ending on April 4, 1923,* at which time it could be converted into a life policy by the payment of a stipulated premium. The first payment is not designated an annual premium, nor is it anywhere referred to as such, in either the policy or the application. On the contrary, it clearly purports to be a single premium *for limited term insurance".* (Italics supplied.)

Speaking further on this subject, the court said:

"When he accepted the policy on the 18th day of May, 1922, he must have known that for the payment he was then making he was getting nothing more than *term insurance* for a term beginning on that date and *ending April 4, 1923.* Whether he was receiving an adequate consideration for the payment rested entirely with him. He may have considered that the securing of the premium rate of age thirty-eight, by the predating of the policy, was more beneficial to him than a month and a half's insurance. Whether it was or not is not within our province to determine". (Italics supplied.)

The court further said:

"If the insured under the policy in this case was to be given the benefit of the premium rate applicable to age thirty-eight, *it was necessary,* in order to avoid the prohibited discrimination, that he be required to pay premiums *at such rate from a time within which thirty-eight years was in fact his insurable age".* (Italics supplied.)

The court held that the Halsey case was distinguishable; that under the Halsey case it had been held that, the entire contract considered, the parties intended the deceased to be insured for one whole year from June 5, 1926. The court held in the Prange case that under the plain, unambiguous provisions of the policies there sued on, the term insurance ended on April 4, 1923; that none had been renewed by the payment of the second premium when due or within the grace

period, and that under their explicit terms they lapsed and ceased to be in force on May 4, 1923, and were not in effect at the date of the death, September 26, 1923.

In the case of Vail v. Midland Life Ins. Co., *supra*, the Springfield Court of Appeals said in a similar case (108 S. W. (2d) 147, l. c. 151):

"In the case at bar it is clearly stated in the policy that 'the premiums for the first year's insurance under this policy ending on the 2nd day of April, 1935, which is term insurance', and that thereafter the insurance would be continued as endowment insurance 'upon the payment of the annual premium of $33.95, on or before the 2nd day of April in every year, during the continuance of this policy, until premiums for 37 policy years, including the first, have been paid'. This is a contract the parties had a right to make, and we think the language is plain and unequivocal".

In Neuner v. Gove, 133 S. W. (2d) 689, l. c. 694, we said:

"However, an application for insurance is merely an offer, which may be accepted or rejected by the company. The sending of a different policy than that applied for constitutes a counter-offer. The insured has a reasonable time to accept or reject the policy and if he keeps it a reasonable length of time, he is deemed to have accepted the policy or counteroffer. [32 C. J., pp. 1102, 1104, 1105, 1107.] Where he keeps the policy an unreasonable length of time, he accepts it as a counter-offer, although he does not read it. [Faith v. Home Life Ins. Co., 203 Mo. App. 196, 208 S. W. 124; Home Ins. Co. of New York v. Horrell, 206 Mo. App. 352, 227 S. W. 830.] If he is unable to read it or to understand, it is his duty to have someone else read it to him or have its terms explained to him and, he is not permitted to rely on any statements made by a soliciting agent who has no authority to make contracts of insurance, concerning its provisions. (Citations.)"

In Lacy v. American Central Life Ins. Co., *supra*, page 199, S. W. (2d), we said:

"The insurance is not necessarily restricted to go into effect upon the date of the delivery of the policy; but, where the policy so provides, the insurance granted may become effective upon some other date and upon a date previous to the delivery of the policy. [Prange v. International Life Ins. Co. of St. Louis, 329 Mo. 651, 46 S. W. (2d) 523, 80 A. L. R. 950.]"

Speaking further of the policy in that case, we said:

"Although the policy in this case did not in itself become effective as a contract until its delivery on January 8, 1930, yet the insurance granted thereby, when it did go into effect, reached back and covered a period from the date of the approval of the application and the issuance of the policy (which was January 3, 1930) to January 3, 1931; and it is clear that January 3 each year thereafter became

the anniversary date for the payment of subsequent annual premiums thereon. Not only so, but the clear provisions of the policy show that the insurance took effect on January 3, 1930, and that the anniversary date for the payment of annual premiums thereon was the 3rd day of January each year thereafter; and the evidence clearly shows that the parties alike understood that such date was the anniversary date for the payment of such premiums and mutually acted upon such understanding.

"It is a well-established rule of law that the construction placed upon a contract by the parties as evidenced by their acts, conduct, or declarations indicating a mutual intent and understanding will be adopted by the courts where the effect thereof is not to alter the meaning of a contract that is otherwise plain and unambiguous".

Speaking further of the policy in the Lacy case, *supra,* we said:

"The same rule must be applied in this case as in the Prange case. The first premium purchased term insurance, which expired January 3, 1931, which date became the anniversary date for the payment of the premiums thereafter, regardless of the date upon which the policy was delivered and regardless of the rule announced in the Halsey Case that, for each yearly premium paid, an insured is entitled to one full year's insurance from the delivery of the policy. The plain and unambiguous terms of the policy in this case preclude the rule in the Halsey Case and other cases following it, relied upon by the plaintiff".

In Winters v. Reserve Loan Life Ins. Co., *supra,* at page 113 (S. W.), in speaking of the policy in that case the court said:

"While the application was dated February 26, 1916, it was not signed by the insured and received by the company until January 22, 1917. The new policy could not have gone into effect prior to that time, and, as the company had not agreed in advance to issue the policy as requested in the application, it had a right to put into the policy any provision in reference to its going into effect that it desired so long as it was based upon a consideration, and the insured was willing to agree to its terms, which he did by accepting the policy. . . . There is nothing inconsistent with the idea of a contract going into effect on a certain date and its covering a past situation as well as the future. We know of no law that would prevent the parties from agreeing that the contract entered into on January 22, 1917, should take effect as of January 26, 1916. To say that the predating of the policy has no legal significance is to wholly ignore the application signed by the insured and what he evidently intended should be the effect of it".

We believe the latest case by the Supreme Court involving the question at hand is that of McQueeny v. National Fidelity Life Ins. Co., 350 Mo. 469, 166 S. W. 461. The policy in that case was dated June 27, 1923, the application was dated July 19, 1923. The first

premium was paid July 19, 1923. The policy provided that it, together with the application attached, constituted the entire contract between the parties. The parties showed the age as forty-nine, and the premium for the first policy year of $187.60. It also provided that the insurance should not take effect until the payment of the first premium, the completion and approval of the application, and that the policies should bear the date of such approval unless otherwise requested in Statement 9 of the application. Under Statement 9 were the words: "Date policy June 28 to hold age". The court said:

"The date of insured's birth was correctly stated as December 28, 1873. Age (nearest birthday) was given as 49. The annual premium on the policy applied for was given as $187.60 to be payable quarterly. Although the age (nearest birthday) was given as 49, to hold that age *the policy would have to be dated July 27, 1923,* because if dated subsequently, the insured's age, nearest birthday, would have been 50, and the level premium rate would have been $196.10 per year". (Italics supplied.)

In that case correspondence was shown in evidence disclosing a recognition by the parties of June 27th as the annual premium paying date. The lower court held that although the policy was issued, delivered and became effective July 19, 1923, in order that the rate at the age of forty-nine might be used, the policy was dated June 27th, and was accepted and received by the insured. It held further that the policy took effect July 19, 1923, *but as of June 27, 1923,* with the annual premiums due on the 27th of June. In affirming this judgment the Supreme Court distinguished it from the Halsey case and cases under that authority, and said, 1. c. 470:

"We think the controlling facts of this case, as heretofore set out, are easily distinguished from the controlling facts in the cases relied upon by appellant. In this case a specific date was agreed upon for a specific purpose. It is true that the application said June 28th, and the policy had to be dated June 27th to accomplish the clear and definite purpose indicated by the insured in the application. The policy, dated June 27, 1923 and providing for the payment of the annual premium 'on the twenty seventh day of June in every year thereafter during its continuance', was received by insured and the premium paid on the basis of insured's age as of that date. The purpose indicated by the application could only be accomplished on the theory that the date of the policy controlled the premium payments ran from that date. We hold that the evidence objected to did not tend to vary any plain and unambiguous terms of the policy, and was properly admitted. The contract fixed June 27th as the annual date for premium payments, 9¼ annual premiums were paid and the policy lapsed September 27, 1932. The net value of the policy must be determined as of that date".

In speaking of the dating back of the policy, the court said:

"Back dating the policy did not make the policy void or unenforceable as written (Landau v. New York Life Ins. Co., 199 Mo. App. 544, 203 S. W. 1003), nor authorize any adjustment of insurance on the basis of insured's attained age on July 19, 1923. The court cannot rewrite the contract of insurance upon the basis suggested. [Prange v. International Life Insurance Co., *supra*.]"

On the basis of the authorities quoted, we believe the documentary evidence in the case at bar shows definitely the date of the period covered by the policy to have begun September 6, 1942, the date of the policy, and expressly and definitely shows the due date of the second quarterly premium to be December 6, 1942, and the following premium dates to be on the 6th days of March, June, September and December of each year. In the first place the consideration clause at the end of the policy states, definitely, as in some of the cases above cited, that the first premium paid for *term* insurance only, ending expressly on *December 6, 1942*. That is plain and unambiguous. In the second place, the insured, in her signed application, gave the date of her birth as March 6, 1911, and gave her age as thirty-one, as computed from her nearest birthday. The plaintiff would not be in a position to say that the insured falsified in this respect nor maintain that in truth and in fact, on October 23, 1944, she was thirty-one years old for insurance purposes, when her last birthday was March 6, 1942. It is evident that in order to issue a policy in October, 1942, on the basis of the insured's given age of thirty-one, when her last birthday had been March 6, 1942, it was necessary that the policy be issued as of a date not later than September 6, 1942, the date which it bore. Under the discrimination statute, Section 5840, R. S. Mo. 1939, upon the showing made by the insured in her application, her insurance rate, if made effective in October, 1942, would have to have been computed at a higher rate than the one agreed to in the policy, and which was paid by insured five times, based on the age of thirty-one.

There was substantial evidence as to discussions between the defendant's agent and the insured and her husband to the effect that these very terms of the policy were the result of an oral agreement, and correspondence was introduced, among which was a letter from the insured to the insurer mailed January 22, 1944, acknowledging the overlooking of premium on the policy and tendering payment, and inquiring relative to reinstatement. There was further evidence of the records of the insurer of the payment of the premiums in accordance with the policy, showing that four subsequent premiums had been paid within the grace periods of December 6, 1942, March 6, 1943, June 6, 1943, and September 6, 1943. It was also evident from the dates the premiums were paid that on the basis of the contention that the second premium date was January 24, 1943, and on

476

the 24th day of each third month thereafter, the payments, as actually made, would have been paid from two to four weeks before the due dates claimed by plaintiff.

We are of the opinion, from the preponderance of the documentary and other evidence in the case that under the policy, as consented and agreed to by the parties therein, the first premium paid on said policy paid for term insurance expiring December 6, 1942; that the succeeding premiums for continuance of said policy became due on the sixth days of December, March, June and September, respectively thereafter; that the last premium date accruing on the policy in question before the death of the insured was December 6, 1943; that the same was not paid at that time nor during the grace period thereafter; that the tender by the insured of her check dated. January 21, 1944, came too late and was rightfully refused by the defendant, and that at the time of the death of the insured, the policy had lapsed, and defendant was not then liable thereunder. The court should have given the declaration of law in the nature of a demurrer offered by appellant at the close of all the evidence in the case, and should have rendered judgment for the defendant. [Anson v. Tietze et al. (Mo.), not yet published.] The judgment of the Circuit Court is reversed. All concur.